MRS. JAMES MARTIN v. R. T. SPENCER.

(Filed 25 February, 1942.)

**Trespass § 9—Evidence held sufficient to show forcible trespass and trespass to the person, rendering defendant liable for injuries proximately resulting.**

Plaintiff's evidence tended to show that she and her 16-year-old brother were replacing some stakes which had been removed from what they thought to be the line between their father's property and the adjoining property of defendant, that defendant called to them in a loud, angry voice and then came over to them and began pulling up the stakes over

MARTIN v. SPENCER.

plaintiff's protest, that defendant continued to yell at plaintiff and her brother in a loud and menacing way, that defendant and plaintiff's brother engaged in an altercation, and that in consequence of all that transpired plaintiff fainted, and a month thereafter had a miscarriage. There was expert testimony that the fright occasioned by defendant's conduct could have produced the death of plaintiff's child. *Held:* Defendant's motion for judgment as of nonsuit was properly denied, since there was evidence of a forcible trespass and also trespass to the person of plaintiff, and therefore defendant may be held liable for the consequences of his wrongful act regardless of whether he had knowlege of plaintiff's *enceinte* condition.

APPEAL by defendant from *Armstrong, J.,* at October Term, 1941, of STOKES.

Civil action for willful trespass to the person.

The record discloses that on the morning of 29 May, 1941, the plaintiff and her 16-year-old brother were replacing some stakes which had been removed from what they thought to be the line between their father's property and the adjoining property of the defendant in the town of Lawsonville, N. C. The defendant, who lived across the road, called to the plaintiff and her brother, "in a loud, angry voice, . . . not to pull up the flowers, his little flowers, . . . that he would come over and show us how to drive stakes on his land," etc. He did come over to where the plaintiff and her brother were, followed by two of his sons, his wife and two daughters. He began to pull up the stakes and did pull up five or six of them. His face was red and drops of perspiration were on his forehead. He threatened to kill the plaintiff's brother. "He looked like a maniac, looked angry." Plaintiff says, "I told him not to come over there like that before me. I told him not to pull up those stakes. . . . He was raving as loud as he could yell. . . . His tone was loud, vicious, angry." (Cross-examination.) "It was not the breaking off of the stakes that made me faint; it was the way he acted and looked and yelled. . . . He didn't touch me, but I didn't know that he wouldn't. . . . He yelled at the top of his lungs and said he would show us how to drive up stakes and came towards us, and I took everything he said to be directed to me or my brother. . . . The tone was enough to be address towards me."

The defendant and plaintiff's brother engaged in an altercation—plaintiff's brother struck the defendant with one of the stakes as he was bending over to pull up the others, and the defendant had a limb in his hand—and in consequence of all that transpired the plaintiff fainted, "got sick, nervous," her husband picked her up in a crying and "jerky condition," took her to see a doctor, later carried her to a hospital, and within a month she had a miscarriage in her fourth month of pregnancy.

Doctors Akers and Morefield each testified that in his opinion the fright occasioned by the conduct of the defendant could have produced the death of plaintiff's child.

On these, the facts chiefly pertinent, there was a verdict and judgment for plaintiff, from which the defendant appeals, assigning as principal error the refusal of the court to grant the defendant's motion for judgment of nonsuit.

*R. J. Scott and Dallas C. Kirby for plaintiff, appellee.*
*Petree & Petree and Glidewell & Glidewell for defendant, appellant.*

STACY, C. J.  The present case is controlled by the decision in *Kirby v. Stores Corp.,* 210 N. C., 808, 188 S. E., 625, under which it was tried, unless the absence of evidence to fix the defendant with knowledge of plaintiff's *enceinte* condition brings it within the principles announced in *Anthony v. Protective Union,* 206 N. C., 7, 173 S. E., 6.  This single point of difference is not regarded as capitally important or of sufficient divergence to change the result.  *May v. Tel. Co.,* 157 N. C., 416, 72 S. E., 1057.  There is evidence of a forcible trespass and also trespass to the person of the plaintiff.  63 C. J., 891.  Hence, the verdict and judgment will be upheld on authority of the *Kirby case.*  "But if there may be a recovery for physical injuries resulting from fright wrongfully caused by the defendant, it would seem that an assault committed in the view of a woman whose presence is known, especially upon a member of her family, was an act of negligence towards the woman, a failure to exercise the due care towards her which the occasion and circumstances required, and was therefore a legal wrong against her which will support an action, if damage follows."  1 Cooley on Torts (3rd), p. 98.

The exceptions addressed to other phases of the trial, admission and exclusion of evidence and portions of the charge call for no elaboration. They are not sustained.

No error.