VANITA B. STANBACK v. FRED J. STANBACK, JR.

No. 94

(Filed 17 May 1979)

1. Contracts § 29.3— breach of contract—mental anguish damages

A claim for mental anguish damages resulting from breach of a contract is stated only when plaintiff's complaint reveals: (1) that the contract was not one concerned with trade and commerce with concomitant elements of profit involved; (2) that the contract was one in which the benefits contracted for were other than pecuniary, i.e., one in which pecuniary interests were not the dominant motivating factor in the decision to contract; and (3) that the contract was one in which the benefits contracted for related directly to matters of dignity, mental concern or solicitude, or the sensibilities of the party to whom the duty is owed, and which directly involved interests and emotions recognized by all as involving great probability of resulting mental anguish if not respected.

2. Contracts § 29.3— separation agreement—breach of provision for payment of taxes—no damages for mental anguish

Plaintiff wife was not entitled to recover damages for mental anguish suffered as a result of defendant husband's alleged breach of a provision of a separation agreement that he would pay any deficiency in plaintiff's 1968 income taxes resulting from a disallowance of her attempted deduction of counsel fees.

3. Damages § 11— punitive damages—breach of contract—necessity for tort

When a breach of contract also constitutes or is accompanied by an identifiable tortious act, the tort committed may be grounds for the recovery of punitive damages.

4. Damages § 12.1— breach of contract—intentional infliction of emotional distress—punitive damages

Plaintiff's complaint stated a claim for punitive damages for the tort of intentional infliction of serious emotional distress accompanying breach of contract where it alleged that plaintiff suffered great mental anguish and anxiety as a result of defendant's breach of a separation agreement provision that he would pay any deficiency in plaintiff's 1968 income taxes resulting from a disallowance of her attempted deduction of counsel fees, and that defendant acted willfully, maliciously, recklessly and with full knowledge of the consequences which would result from his conduct, plaintiff's allegation that she suffered great mental anguish and anxiety being sufficient to permit her to go to trial on the question of whether the mental anguish and anxiety caused physical injury.

5. Process § 18— elements of abuse of process—improper act

Abuse of process requires both an ulterior motive and an act in the use of the legal process not proper in the regular prosecution of the proceeding.

**6. Process § 19— abuse of process—improper act—insufficiency of complaint**

Plaintiff's complaint failed to state a claim for abuse of process where it alleged that defendant's suit against her in a federal court was brought with ulterior motives but it failed to allege that defendant committed any willful act not proper in the regular course of the proceeding once he initiated the suit against her.

**7. Rules of Civil Procedure § 8.1— notice pleading—mislabeled claim**

When the allegations of the complaint give sufficient notice of the wrong complained of, an incorrect choice of legal theory should not result in dismissal of the claim if the allegations of the complaint are sufficient to state a claim under some legal theory.

**8. Malicious Prosecution § 2— claim based on civil action—necessity for interference with plaintiff's person or property**

When a claim for malicious prosecution is based on the institution of a prior civil proceeding, plaintiff must show not only that defendant initiated the prior proceeding, that he did so maliciously and without probable cause, and that the prior proceeding terminated in plaintiff's favor, but also that there was some arrest of his person, seizure of his property, or some other element of special damage resulting from the action such as would not necessarily result in all similar cases.

**9. Malicious Prosecution § 6— termination of prosecution—adjudication on merits not necessary**

The plaintiff in an action for malicious prosecution may allege merely that the prior civil proceeding on which the action is based was dismissed without alleging that the prior proceeding was terminated in plaintiff's favor "on the merits."

**10. Malicious Prosecution § 8— claim based on civil suit—interference with plaintiff's person or property—insufficient allegations**

Plaintiff's complaint failed to state a claim for malicious prosecution based on a prior civil suit where it contained no allegation of a substantial interference with either the plaintiff's person or her property as contemplated by the special damage requirement for such a claim, plaintiff's allegation that she incurred expenses in defending the suit and suffered embarrassment because of it being insufficient to meet such requirement.

**11. Rules of Civil Procedure § 12— consideration of material incorporated into complaint—motion to dismiss not converted into motion for summary judgment**

Defendant's Rule 12(b)(6) motion to dismiss a complaint for abuse of process based on a federal civil suit for failure to state a claim for relief was not converted into a Rule 56 motion for summary judgment by the court's consideration of the complaint in the prior federal action where plaintiff specifically incorporated the federal complaint into her complaint by reference and attached a copy thereof to her complaint, and the federal complaint was, therefore, not a matter outside the pleadings.

Justices EXUM and BRITT took no part in the consideration or decision of this case.

Stanback v. Stanback

ON petition for discretionary review of the decision of the Court of Appeals, 37 N.C. App. 324, 246 S.E. 2d 74 (1978), affirming an order of *Rousseau, J.,* allowing defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Order entered 15 April 1977 in Superior Court, ROWAN County. This case was argued as No. 119 at the Fall Term 1978.

Plaintiff-wife brought this action seeking to recover actual, consequential and punitive damages from defendant-husband for breach of contract; and, in a second Count, to recover damages for abuse of process. The complaint alleges that defendant-husband breached a part of their separation agreement, a supplementary letter-agreement given in consideration of the formal separation agreement's provision allocating the burden of payment of plaintiff-wife's attorneys' fees to her and increasing four of defendant's periodic payments to her by 25% of the wife's attorneys' fees as set by the court. The supplementary agreement was an agreement between the parties' attorneys, and reads in part as follows:

"We agree that if Vanita Stanback is unable to deduct the fees she is required to pay you during 1968 that Fred Stanback will pay to her through you the difference in the federal and state income tax that she is required to pay by virtue of being unable to make this deduction for attorneys' fees.

It is understood that a valid effort will be made by Mrs. Stanback to claim such deduction and that the tax returns for 1968, both federal and state, will be prepared under the supervision of one of you."

Plaintiff's complaint in Count Number I alleges: That plaintiff paid her attorneys $31,000.00, the fee set by the court, and claimed both federal and state income tax deductions in that amount; that the I.R.S. audited her 1968 tax return and disallowed $28,500.00 of the $31,000.00 deduction; that the North Carolina Department of Revenue also audited plaintiff's 1968 tax return and disallowed $28,500.00 of the $31,000.00 deduction; that defendant, upon demand, refused to pay her tax deficiency; that as a result of this failure to honor their agreement, plaintiff was unable to pay her tax deficiency, and the United States subsequently filed a lien against her property; that in 1974 plaintiff bor-

rowed $18,099.51, secured by a deed of trust on her home, to pay off her deficiency to the I.R.S. thus avoiding the sale of her home by the United States to satisfy the tax deficiency; that she has been unable to pay off the loan, and the lender is in the process of foreclosing on her home; that the State of North Carolina, as a means of collecting her State income tax deficiency, issued a garnishment against the defendant and, as a result of the garnishment, the defendant paid $2,989.00 plus interest to the State "using funds which he had agreed under the deed of separation between the parties to pay to the [plaintiff] for support and maintenance."

Plaintiff requested that the court award her $16,357.30 plus interest from December 31, 1968 as actual general damages. She also requested $250,000.00 consequential damages as compensation for mental anguish and loss of reputation in the community and $100,000.00 punitive damages for defendant's alleged breach of their agreement. Plaintiff was allowed to amend her complaint to allege specifically that the consequential mental anguish damages were within the contemplation of the parties at the time they entered into the agreement.

Plaintiff joined in her complaint a Count Number II labeled "abuse of process", alleging that defendant had initiated a suit against the I.R.S. in federal court and had joined her as a codefendant for no legitimate reason but rather "to harass, embarrass and annoy the plaintiff . . . and to cause her to incur expenses for the defense of said action and to cause her to forego her legal rights and remedies." The complaint further alleged that the federal court action had been dismissed.

The defendant moved under G.S. 1A-1, Rule 12(b)(6) to dismiss both Counts. He also moved under G.S. 1A-1, Rule 37 to dismiss the Counts because of plaintiff's wilful failure to answer interrogatories. The trial court denied the motion to dismiss under Rule 37 but granted the Rule 12(b)(6) motion to dismiss both Counts with the exception of that part of plaintiff's Count Number I requesting actual general damages for breach of the agreement.

From this order of the court, plaintiff appealed to the Court of Appeals, which affirmed the dismissals by the trial court. We

granted plaintiff-appellant's petition for discretionary review of the decision of the Court of Appeals.

*Brinkley, Walser, McGirt, Miller & Smith, by Walter F. Brinkley and Benjamin G. Philpott for plaintiff-appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by Norwood Robinson and George L. Little, Jr.; and Kluttz & Hamlin, by Clarence Kluttz for defendant-appellee.*

BROCK, Justice.

The motion to dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161 (1970). In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted. *Newton v. Standard Fire Ins. Co.,* 291 N.C. 105, 229 S.E. 2d 297 (1976). The motion performs substantially the same function as the old common law demurrer, *Sutton v. Duke, supra,* and in applying the rule we look to the interpretation of the federal rule for guidance. As a general rule, "a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" 2A *Moore's Federal Practice,* § 12.08, pp. 2271-74 (2d ed. 1975). The motion to dismiss the claims in Count Number I in this case was directed to the absence of any law to support the requests for relief. We therefore are required to examine the various requests for relief set forth in the claims in Count Number I and determine whether or not the law of this jurisdiction offers support for the requests made.

### Count Number I—Breach of Contract

#### a. Actual Damages

Plaintiff's request for actual general damages was not dismissed by the trial court, and the sufficiency of that part of the claim is not before us.

Count Number I—Breach of Contract

b. Consequential Damages

In addition to her request for actual general damages under Count Number I, plaintiff requested that the court award her $250,000.00 in consequential damages as compensation for the "great mental anguish and anxiety [she suffered] as a result of the failure of the defendant to comply with his agreement." In support of this request plaintiff alleged: That she had insufficient resources to pay the deficiency assessed when the I.R.S. disallowed the major portion of her attempted deduction of the total amount paid to her attorneys; that upon her failure to pay, the I.R.S. filed a tax lien against her home, which became a matter of public record; that subsequently the I.R.S. came to her home and seized the property, posting a formal notice of seizure on the front door, visible to her neighbors and the public; that the I.R.S. subsequently levied on the property and published notice of sale of her home at public auction; that all the foregoing actions taken by the I.R.S. were given publicity in the local media thereby causing her to suffer great embarrassment, humiliation, and degradation in the eyes of her friends and the public in that "this information has been interpreted by the members of the public as indicating that she has failed to pay taxes which were justly due the Internal Revenue Service and indicating a lack of public responsibility and personal integrity"; that she was forced to borrow the sum needed to pay the deficiency, and because she is unable to pay off that loan, the private lender is in the process of foreclosing on a deed of trust given on her home to secure the loan.

The trial court's action in granting defendant's motion to dismiss this request for relief raises the following issue on appeal: In an action based on an alleged breach of a tax deficiency indemnification agreement supplementing a general marital separation agreement is the plaintiff entitled to recover damages for mental anguish suffered as a result of the defendant's alleged breach?

When an action for breach of contract is brought, the damages recoverable are those which may reasonably be supposed to have been in the contemplation of the parties at the time they contracted. *Price v. Goodman*, 226 N.C. 223, 37 S.E. 2d 592 (1946); *Troitino v. Goodman*, 225 N.C. 406, 35 S.E. 2d 277 (1945).

---

**Stanback v. Stanback**

---

This limitation on the recovery of damages for breach of contract was first enunciated in the famous English case of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145 (1854). In applying this test we have often relied on the following declaration of it in the Restatement of the Law of Contract, § 330, p. 509:

> "Foreseeability of harm as a Requisite for Recovery. In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

Damages for injury that follows the breach in the usual course of events are always recoverable provided the plaintiff proves that such injury actually occurred as a result of the breach. Whether damages are recoverable for injury that does not follow breach of a particular contract in the usual course of events (special damages) depends upon the information communicated to or the knowledge of the breaching party at the time of contracting. *Troitino v. Goodman, supra; Iron Works Co. v. Cotton Oil Co.,* 192 N.C. 442, 135 S.E. 343 (1926); 22 Am. Jur. 2d, Damages, § 59, p. 90. The test is generally described as one of foreseeability. In the first instance the damages recoverable are foreseeable because they are such that will follow in the ordinary course of events from breach of the particular kind of contract. In the second instance the damages recoverable are foreseeable because the party contracting had knowledge at the time he entered into the particular contract of the special circumstances giving rise to special damages upon breach, *i.e.,* damages that would not be expected to follow in the ordinary course of events from breach of the contract. This test of foreseeability generally achieves its purpose, *i.e.,* providing a workable method of imposing limitations on contractual liability, when strictly commercial contracts are involved and only damages for pecuniary loss are sought.

When recovery is sought for mental anguish suffered as the result of breach of contract, however, the rule has proven to be less than adequate, and courts as a general rule have denied recovery on policy grounds of limiting contractual risk with or

without formal application of the *Hadley v. Baxendale* test. *See, e.g., Hall v. Encyclopaedia Britannica, Inc.*, 325 Mich. 35, 37 N.W. 2d 702 (1949); *Seidenbach's Inc. v. Williams*, Okl. 361 P. 2d 185 (1961). *See D. Dobbs, Remedies*, § 12.4, p. 819; *McCormick on Damages*, § 145, p. 592; Comment, *Recovery for Mental Anguish from Breach of Contract: The Need for an Enabling Statute*, 5 Cal. West. L. Rev. 88 (1968); 38 Am. Jur. 2d, Fright, Shock, and Mental Disturbance, § 33, p. 40; *Annot.* 23 A.L.R. 361; *Annot.* 44 A.L.R. 428; *Annot.* 56 A.L.R. 657.

It is generally acknowledged that financial loss inflicted on an individual by breach of contract may often cause the party to suffer disappointment and mental anguish. *McCormick on Damages, supra*, at § 145, pp. 592-93. Despite the probability of such mental anguish damages, recovery for them has been routinely denied in contract actions, generally on the stated grounds that mental anguish damages are too remote to have been in the contemplation of the parties to the contract. *E.g., Brunson v. Ranks Army Store*, 161 Neb. 519, 73 N.W. 2d 803 (1955). This judicial reluctance to award damages for mental anguish in contract actions is reflected in the Restatement of the Law of Contracts, § 341, p. 559:

> "In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss."

The rule set forth in this section of the Restatement incorporates most of the exceptions which courts have created to the general rule against recovery of mental anguish damages in a breach of contract action. The earliest exceptions to the general rule came in cases involving breach of contract to convey a telegraph message. *SoRelle v. Western Union Telegraph Co.*, 55 Tex. 308 (1881), the first case in the United States to hold that mental anguish damages were recoverable for breach of contract, involved the defendant's failure to transmit a message to plaintiff announcing his mother's death, which prevented him from attend-

ing her funeral. This Court adopted this limited exception for cases involving failure to transmit messages concerned with death or illness in *Young v. Telegraph Co.*, 107 N.C. 370, 11 S.E. 1044 (1890) and applied it in subsequent decisions. *Russ v. Telegraph Co.*, 222 N.C. 504, 23 S.E. 2d 681 (1943); *Betts v. Telegraph Co.*, 167 N.C. 75, 83 S.E. 164 (1914); *Cashion v. Telegraph Co.*, 123 N.C. 267, 31 S.E. 493 (1898). Recovery in those cases was not limited by a requirement that the plaintiff suffer bodily harm as well as mental anguish. *Young v. Telegraph Co.*, *supra.*

Other exceptions to the general rule against mental anguish damages in contract actions have been created. In *Allen v. Baker*, 86 N.C. 91 (1882), this Court held that such damages may be recovered for breach of contract to marry. Courts of other jurisdictions have allowed recovery of mental anguish damages when the breach amounts in substance to a wilful or independent tort. *E.g.*, *Wall v. St. Louis & S.F. RR.*, 184 Mo. App. 127, 168 S.W. 257 (1914); and when the breach of contract involves the duty of an innkeeper or common carrier. *E.g.*, *Southeastern Greyhound Corp. v. Graham*, 69 Ga. App. 621, 26 S.E. 2d 371 (1943); *Milner Hotels Inc. v. Brent*, 207 Miss. 892, 43 So. 2d 654 (1949). As the number of exceptions to the general rule has grown, some courts have attempted to formulate a rule to encompass them and provide a standard for determining whether a claim for mental anguish damage may be made in a contract action. In his treatise on remedies, Professor Dobbs notes this trend:

> "Another group of cases have tried to formulate a broader doctrine, allowing recovery for mental distress resulting from breach of contract in a wide range of non-tortious breach situations. The formula for expressing the broader rule of recovery probably has not reached its ultimate form and it is expressed in various ways. The essential idea seems to be that some contracts clearly have what might be called personal rather than pecuniary purposes in view, and that the purpose of such contracts is utterly frustrated until mental damages are awarded for the breach." Dobbs, *supra,* at § 12.4, p. 819.

Professor Dobbs correctly points out that in an attempt to formulate a rule to encompass the various exceptions courts have

gone beyond the mere creation of isolated exceptions to the general rule and by doing so have formulated a principle that has the potential of allowing recovery for mental anguish in a wider range of cases. *See Crisci v. Security Ins. Co. of New Haven, Conn.,* 66 Cal. 2d 425, 426, P. 2d 173, 58 Cal. Rptr. 13 (1967); *Westervelt v. McCullough,* 68 Cal. App. 198, 228 P. 734 (1924).

The case of *Lamm v. Shingleton,* 231 N.C. 10, 55 S.E. 2d 810 (1949) represents this Court's formulation of a flexible rule to encompass the various exceptions to the general rule against allowing mental anguish damages in a contract action. *Lamm* involved breach of a burial contract. Several months after defendant had performed his contract to bury plaintiff's husband, the vault in which plaintiff's husband's casket had been buried rose above the level of the ground during a very rainy spell of weather. Upon being informed of this, defendant took steps to reinter the body. The plaintiff was present at the time defendant raised the vault and it was discovered that the locks on the vault had either not been fastened or had broken and the vault had filled with water and mud, wetting the casket. Plaintiff sought damages for the shock and resulting nervous condition she alleged she had suffered as a result of viewing the damage to the casket. This Court held that the plaintiff's action was for breach of the contract made with defendant to bury plaintiff's husband and not an action in tort. The Court first took note of the general rule against mental anguish damages in contract actions stating:

> "[C]ontracts are usually commercial in nature and relate to property or to services to be rendered in connection with business or professional operations. Pecuniary interest is dominant. Therefore, as a general rule, damages for mental anguish suffered by reason of the breach thereof are not recoverable. Some type of mental anguish, anxiety, or distress is apt to result from the breach of any contract which causes pecuniary loss. Yet damages therefor are deemed to be too remote to have been in the contemplation of the parties at the time the contract was entered into to be considered as an element of compensatory damages." *Id.* at 14, 55 S.E. 2d at 813.

Taking note of the various isolated exceptions to this general rule this Court in *Lamm* adopted what it described as "a definite ex-

ception" to the general rule, indicating that this formulation of the exception was sufficient to encompass the various isolated exceptions to the general rule and allow plaintiff to maintain her action for mental anguish damages:

> "*Where the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefore may be recovered.* 15 A.J. 600; McCormick on Damages 592; *Warner v. Allen*, 34 A.L.R. 1348. In such case the party sought to be charged is presumed to have contracted with reference to the payment of damages of that character in the event such damages should accrue on account of his breach of contract. (Emphasis added.) *Id.* at 14-15, 55 S.E. 2d at 813.

Applying this formulation of the exception to the alleged breach of the burial contract plaintiff had made with defendant, the Court in *Lamm* observed:

> "The tenderest feelings of the human heart center around the remains of the dead. When the defendants contracted with plaintiff to inter the body of her deceased husband in a workmanlike manner they did so with the knowledge that she was the widow and would naturally and probably suffer mental anguish if they failed to fulfill their contractual obligation in the manner here charged. The contract was predominately personal in nature and *no substantial pecuniary loss would follow its breach. Her mental concern, her sensibilities, and her solicitude were the prime considerations for the contract, and the contract itself was such as to put the defendants on notice that a failure on their part to inter the body properly would probably produce mental suffering on her part.* It cannot be said, therefore, that such damages were not within the contemplation of the parties at the time the contract was made." (Emphasis added.) *Id.* at 15, 55 S.E. 2d at 813-14.

In *Stewart v. Rudner*, 349 Mich. 459, 84 N.W. 2d 816 (1957), the Michigan Supreme Court formulated an exception to the general rule against mental anguish damages in contract actions similar to that adopted in *Lamm v. Shingleton, supra. Stewart* involved an alleged breach of an agreement by defendant doctor to perform a Caesarian section delivery of plaintiff's child which failure resulted in the stillbirth of the child. Finding that plaintiff's complaint did indeed state a cause of action for mental anguish damages the Court in *Stewart* observed:

"Few areas of our law, however, are more shrouded in mists of history and of doubt than this area of recovery for mental distress, for grief, anxiety, or sorrow. . . . We have come to realize, slowly it is true, that the law protects interests of personality, as well as the physical integrity of the person, and that emotional damage is just as real (and as compensable) as physical damage. . . ."

\*   \*   \*

"It is true, in the ordinary commercial contract, damages are not recoverable for disappointment, even amounting to alleged anguish, because of breach. Such damages are, in the words of defendant's required charge, 'too remote.' But these are contracts entered into for the accomplishment of a commercial purpose. *Pecuniary interests are paramount.* In such cases breach of contract may cause worry and anxiety varying in degree and kind from contract to contract, depending upon the urgencies thereof, the state of mind of the contracting parties, and other elements, but it has long been settled that recovery therefor was not contemplated by the parties as the 'natural and probable' result of the breach. *Hadley v. Baxendale*, (9 Exch. 341, 156 Eng. Rep. 145 5 Eng. Rul. Cas. 502); *Clark v. Moore*, 3 Mich. 55; *Miholevich v. Mid-West Mutual Auto Insurance Co.*, 261 Mich. 495, 246 N.W. 202, (86 A.L.R. 633); *Frederick v. Hillebrand*, 199 Mich. 333, 165 N.W. 810.

"Yet not all contracts are purely commercial in their nature. *Some involve rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal.* In

such cases the award of damages for mental distress and suffering is a commonplace, even in actions *ex contractu* . . . ."

\*     \*     \*

*"When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering.* In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it." (Emphasis added.) *Id.* at 465-71, 84 N.W. 2d at 821-24.

The Alabama Supreme Court has also enunciated a rule intended to encompass the various exceptions to the general rule. In the case of *F. Becker Asphaltum Co. v. Murphy*, 224 Ala. 655, 141 So. 630 (1932) it was stated thusly:

"Yet where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefore be taken into consideration and awarded." *Id.* at 657, 141 So. at 631.

*See also Hill v. Sereneck*, 355 So. 2d 1129 (Ala. Civ. App. 1978).

There is a line of cases in California allowing recovery for mental anguish damages in contract actions. One of the earliest of these was *Westervelt v. McCullough*, 68 Cal. App. 198, 228 P. 734 (1924), wherein the plaintiff was allowed to recover for injuries she suffered as a result of defendant's breach of promise to provide plaintiff a home for the duration of plaintiff's life. Although the case involved physical suffering and illness resulting from mental anguish rather than mental anguish alone, the California court relied predominantly on contract cases from other jurisdictions in which recovery for mental anguish alone was allowed to hold:

"Whenever the terms of a contract relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties, or the subject matter of which is such as directly to affect or move the affection, self-esteem, or tender feelings of that party, he may recover damages for physical suffering or illness proximately caused by its breach." *Id.* at 208-09, 228 P. at 738.

Subsequent California cases have applied this principle to recovery of damages in a contract action for mental anguish damages. *See Windeler v. Scheers Jewelers,* 8 Cal. App. 3d 844, 88 Cal. Rptr. 39 (1970).

The standard for recovery adopted by the California courts appears to be the broadest in this area of the law. We think it is overly broad and imposes too great a burden on parties to a contract.

[1] Having reexamined our own holding in *Lamm v. Shingleton, supra,* and cases from other jurisdictions in the same vein, we hold that a claim for mental anguish damages resulting from breach of contract is stated only when the plaintiff's complaint reveals the following. First, that the contract was not one concerned with trade and commerce with concomitant elements of profit involved. Second, that the contract was one in which the benefits contracted for were other than pecuniary, *i.e.,* one in which pecuniary interests were not the dominant motivating factor in the decision to contract. And third, the contract must be one in which the benefits contracted for relate *directly* to matters of dignity, mental concern or solicitude, or the sensibilities of the party to whom the duty is owed, and which *directly* involves interests and emotions recognized by all as involving great probability of resulting mental anguish if not respected.

Upon breach of contract of the nature just described, the mental anguish suffered will in almost every case result from other than pecuniary loss. And when a contract of such nature is involved, mental anguish damages are a natural and probable consequence of breach, and it can reasonably be said that such damages were within the contemplation of the parties at the time they contracted. In such an event, it is presumed that they contracted with reference to the payment of such damages in the

event of breach. *Lamm v. Shingleton, supra,* at 14-15, 55 S.E. 2d at 813; *McCormick on Damages, supra,* § 595, p. 592.

[2]  Applying the foregoing principles to the present case, we affirm the opinion of the Court of Appeals holding that the trial court properly granted defendant's Rule 12(b)(6) motion to dismiss plaintiff's claim for mental anguish consequential damages. Although plaintiff's complaint reveals the contract she made with defendant husband was clearly not one concerned with trade and commerce and elements of profit, it also clearly reveals pecuniary interest was the motivating factor in the decision to enter into the contract. The agreement was one for the payment of money in the event plaintiff was unable to deduct fees she had paid to her attorneys and consequently assessed a deficiency on her income tax return for the year 1968. That plaintiff may also have sought to protect herself from the mental anguish which might or might not have resulted in the event of breach of such an agreement was a subordinate factor in her decision to enter into such a contract, if indeed a factor at all. *See Farmers Ins. Exchange v. Henderson,* 82 Ariz. 335, 313 P. 2d 404 (1957); *Bolden v. John Hancock Mut. Life Ins. Co.,* 422 F. Supp. 28 (E.D. Mich. 1976). *But see Crisci v. Security Ins. Co. of New Haven, Conn., supra.*

Moreover, plaintiff's complaint clearly fails to show that the agreement was one in which the benefits she contracted for were directly related in any way to matters of mental concern or solicitude or her sensibilities, and that it directly involved interests and emotions recognized by all as involving great probability of resulting mental anguish if not respected. The agreement she made was for the payment of money to protect her from the economic loss she would suffer in the event her attempted deduction of the fees paid to her attorneys was disallowed. The contract is clearly distinguishable from those for breach of which mental anguish damages are recoverable, such as burial contracts, *Lamm v. Shingleton, supra,* contracts to marry, *Allen v. Baker, supra,* contracts to perform funeral services, *Meyer v. Nottger,* Iowa, 241 N.W. 2d 911 (1976), and contracts to perform certain medical services, *Stewart v. Rudner, supra.*

The trial court was correct in dismissing, and the Court of Appeals was correct in affirming the dismissal of plaintiff's claim for consequential mental anguish damages contained in Count

Number I of her complaint. Accordingly we affirm the Court of Appeals upon this aspect of the case.

### Count Number I—Breach of Contract

### c. Punitive Damages

[3]   In Count Number I, plaintiff also requested that she be awarded punitive damages in the amount of $100,000.00 for defendant's alleged breach of their agreement. The general rule as it has often been stated in the opinions of this Court is that punitive damages are not recoverable for breach of contract with the exception of breach of contract to marry. *Newton v. Standard Fire Ins. Co.,* 291 N.C. 105, 229 S.E. 2d 297 (1976); *Oestreicher v. Stores,* 290 N.C. 118, 225 S.E. 2d 797 (1976); *King v. Insurance Co.,* 273 N.C. 396, 159 S.E. 2d 891 (1968). But when the breach of contract also constitutes or is accompanied by an identifiable tortious act, the tort committed may be grounds for recovery of punitive damages. *Newton v. Insurance Co., supra.* Our recent holdings in this area of the law clearly reveal, moreover, that allegations of an identifiable tort accompanying the breach are insufficient alone to support a claim for punitive damages. In *Newton* the further qualification was stated thusly: "Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Newton, supra,* at 112, 229 S.E. 2d at 301. *See* Comment, *Remedies— "Extra-Contractual" Remedies for Breach of Contract in North Carolina,* 55 N.C.L. Rev. 1125 (1977).

[4]   Because we think the allegations in plaintiff's complaint with respect to punitive damages are sufficient at least to state a claim for damages for an identifiable tort accompanying a breach of contract, the trial court's dismissal of that claim must be reversed. Plaintiff's allegations are sufficient to state a claim for what has become essentially the tort of intentional infliction of serious emotional distress. Plaintiff has alleged that defendant intentionally inflicted mental distress. This tort has been recognized in many states. William Prosser states that liability arises under this tort when a defendant's "conduct exceeds all bounds usually tolerated by decent society" and the conduct "causes mental distress of a very serious kind." *Prosser, The Law of Torts,* § 12, p. 56 (4th ed. 1971).

*Kirby v. Jules Chain Stores Corp.*, 210 N.C. 808, 188 S.E. 625 (1936) stands at the head of this line of cases. The plaintiff in *Kirby* had made purchases of merchandise from the defendant on credit. The defendant's collection agent subsequently went to the plaintiff's home to attempt to collect the amounts due on her account. The plaintiff told him she was unable to pay at that time because she was in her seventh month of pregnancy and unable to work. Defendant's collection agent proceeded to abuse the plaintiff verbally in a profane and malicious manner. There was evidence that he had done so in a similar fashion two weeks before. The plaintiff testified that she became ill from the fright she suffered as a result of the verbal abuse. She also testified that her illness and accompanying pain continued for a week at which time her baby was born prematurely. The baby was born dead. There was medical testimony to the effect that the premature birth could have been caused by the defendant's conduct.

A verdict was returned in favor of the plaintiff. On appeal, defendant interposed a demurrer to the complaint in this Court on the ground that it failed to state a cause of action. In an opinion by Chief Justice Stacy, this Court overruled the demurrer, holding that the plaintiff had stated a cause of action for "trespass to the person," which may be either wilfully or negligently inflicted. Relying on *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890) and supportive rationale in North Carolina decisions, the Court held that damages for fright are recoverable when some physical injury contemporaneously, naturally, and proximately results from the fright caused by a defendant's negligent and wilful misconduct. *Kirby* was subsequently applied to allow recovery in similar situations in *Sparks v. Tennessee Mineral Products Corp.*, 212 N.C. 211, 193 S.E. 31 (1937); *Martin v. Spencer*, 221 N.C. 28, 18 S.E. 2d 703 (1942); *Langford v. Shu*, 258 N.C. 135, 128 S.E. 2d 210 (1962); and *Slaughter v. Slaughter*, 264 N.C. 732, 142 S.E. 2d 683 (1965).

The most recent opinion of this Court applying the *Kirby* decision is *Crews v. Provident Finance Co.*, 271 N.C. 684, 157 S.E. 2d 381 (1967). Plaintiff's evidence in *Crews* showed: That she had borrowed money from defendant and had been required to secure the loan with a chattel mortgage on her furniture; that defendant caused claim and delivery papers to be issued to obtain posses-

sion of her furniture; that when the papers were served on her she paid the arrearage demanded; that defendant's collection agent subsequently came to her and demanded that she pay more money; that upon her refusal to do so, he verbally abused her; that she became angry and upset as a result; that she subsequently became extremely nervous, suffered an attack of angina and an alarming increase in her blood pressure as a result. The jury returned a verdict in plaintiff's favor.

Defendant contended on appeal that plaintiff's claim should have been dismissed because *Kirby* was not applicable. The basis of this contention was the plaintiff's failure to present evidence that she was frightened by the conduct of defendant's collection agent. In an opinion by Justice Pless, we held that *Kirby* is not limited to recovery for physical harm resulting from fright only. Plaintiff's evidence that she became angry and upset as a result of the agent's conduct was held to be sufficient. Relying on Section 436 of the *American Law Institute's Restatement of the Law of Torts*, we held that recovery under *Kirby* may be based on fright or *other emotional disturbance* resulting from the defendant's conduct. *Id.* at 689, 157 S.E. 2d at 386.

Plaintiff in this case alleges that defendant's conduct in breaching the contract was "wilful, malicious, calculated, deliberate and purposeful . . . ." In paragraph 13 of the first Count of her complaint plaintiff alleges that "she has suffered great mental anguish and anxiety . . ." as a result of defendant's conduct in breaching the agreement. She further alleges that defendant acted recklessly and irresponsibly and "with full knowledge of the consequences which would result. . . ."

Plaintiff's allegation that she suffered great mental anguish and anxiety as a result of defendant's allegedly wilful, malicious, and calculated conduct is sufficient allegation of "other emotional disturbance" to state a claim under *Kirby* as interpreted in *Crews*. By alleging that defendant acted with full knowledge of the consequences of his actions she has sufficiently indicated that the harm she suffered was a foreseeable result of his conduct. *See Slaughter v. Slaughter, supra,* at 735, 142 S.E. 2d at 686. Although it is clear that plaintiff must show some physical injury resulting from the emotional disturbance caused by defendant's alleged conduct, given the broad interpretation of "physical in-

jury" in our case law, we think her allegation that she suffered great mental anguish and anxiety is sufficient to permit her to go to trial upon the question of whether the great mental anguish and anxiety (which she alleges) has caused physical injury.[1]

The requirement that there be some element of aggravation to the tortious conduct before punitive damages will be allowed is also met by the allegations of plaintiff's complaint. "Such aggravated conduct was early defined to include 'fraud, *malice*, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness . . .' *Bake v. Winslow* citing *Holmes v. R.R.*, 94 N.C. 318 (3 Davidson) (1886)." *Newton, supra*, at 112, 229 S.E. 2d at 301. Plaintiff here alleges that defendant acted wilfully, maliciously, recklessly, and with full knowledge of the consequences which would result from his conduct. She is entitled to have at least the opportunity to prove those allegations.

The trial court was in error in dismissing, and the Court of Appeals erred in affirming the dismissal of, plaintiff's claim for punitive damages contained in Count Number I of her complaint. Accordingly, we reverse the Court of Appeals upon this aspect of the case.

## Count Number II—Abuse of Process

Plaintiff's Count Number II, labeled abuse of process, was also dismissed under Rule 12(b)(6) for failure to state a claim. This claim against defendant was predicated on his conduct in bringing a prior suit in federal court against the I.R.S. and joining the plaintiff as a co-defendant therein. A copy of the complaint filed in that action was attached to and explicitly incorporated as part of plaintiff's complaint in this proceeding. The copy attached reveals that defendant sought in bringing the prior action to restrain and enjoin the I.R.S. and the plaintiff from "acting in concert to deprive [him] of his property and civil rights guaranteed under the Constitution and laws of the United States." This claim for injunctive relief was supported by allegations to the effect

---

1. *E.g., Kimberly v. Howland,* 143 N.C. 398, 403-04, 55 S.E. 778, 780 (1906) where it was held: "The nerves are as much a part of the physical system as the limbs, and in some persons are very delicately adjusted and when 'out of tune' cause excruciating agony. We think the general principles of the law of torts support a right of action for physical injuries resulting from negligence, whether wilful or otherwise, none the less strongly because the physical injury consists of a wrecked nervous system instead of lacerated limbs."

that the I.R.S. had taken inconsistent positions on the question of whether the sums paid by defendant-husband to plaintiff-wife pursuant to their agreement allocating the payment of plaintiff-wife's attorneys' fees to her were deductible. The complaint further alleged that plaintiff-wife "encouraged and actively participated in the illegal and inconsistent position taken by [the I.R.S.] in order to force [defendant-husband] into paying to her . . . the amount of the deficiency assessed against her by [the I.R.S.]."

· Plaintiff's claim labeled abuse of process alleged:

> "3. The true purpose of said action [brought in federal court against her and the I.R.S.] was not to seek legitimate relief but to harass, embarrass and annoy the plaintiff, Vanita B. Stanback, and to cause her to incur expenses for the defense of said action and to cause her to forego her legal rights and remedies.

> 4. The action of the defendant was malicious, wrongful and unjustified and without probable cause since his claim, if any, against the United States was unrelated to this separate obligation to the plaintiff herein and the defendant instituted the said action for an ulterior and wrongful purpose of restraining the plaintiff from exercising her rights."

[5] Protection against wrongful litigation is afforded by a cause of action for either abuse of process or malicious prosecution. The legal theories underlying the two actions parallel one another to a substantial degree, and often the facts of a case would support a claim under either theory. See *Smith v. Somers*, 213 N.C. 209, 195 S.E. 382 (1938); *Railroad Co. v. Hardware Co.*, 138 N.C. 174, 50 S.E. 571 (1905). In *Fowle v. Fowle*, 263 N.C. 724, 728, 140 S.E. 2d 398, 401 (1965), it was observed that "abuse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a legally issued process whereby a result not lawfully or properly obtainable under it is attended (sic) to be secured." See *Barnette v. Woody*, 242 N.C. 424, 88 S.E. 2d 223 (1955); *Finance Corp. v. Lane*, 221 N.C. 189, 19 S.E. 2d 849 (1942); *Wright v. Harris*, 160 N.C. 542, 76 S.E. 489 (1912). In an excellent article analyzing the cases in which this Court has considered both malicious prosecution and abuse of pro-

cess, Professor Robert Byrd observes that abuse of process "requires both an ulterior motive and *an act* in the use of the legal process not proper in the regular prosecution of the proceeding," and that "[b]oth requirements relate to the defendant's purpose to achieve through the use of the process some end foreign to those it was designed to effect." R. Byrd, *Malicious Prosecution in North Carolina*, 47 N.C.L. Rev. 285, 288 (1969). The ulterior motive requirement is satisfied when the plaintiff alleges that the prior action was initiated by defendant or used by him to achieve a collateral purpose not within the normal scope of the process used. The act requirement is satisfied when the plaintiff alleges that once the prior proceeding was initiated, the defendant committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter. *Edwards v. Jenkins*, 247 N.C. 565, 101 S.E. 2d 410 (1957); *Barnette v. Woody, supra; Finance Corp. v. Lane, supra; W. Prosser, Torts*, § 121 p. 857 (4th ed. 1971). An example of such a wilful act not proper in the regular prosecution of the proceeding is an offer made after the proceeding has been initiated to discontinue it in return for the payment of money. *Ellis v. Wellons*, 224 N.C. 269, 29 S.E. 2d 884 (1944).

[6] Plaintiff's complaint sufficiently alleges that defendant's suit against her in federal court was brought with ulterior motives. Her complaint fails, however, to allege that defendant committed any wilful act not proper in the regular course of the proceeding once he initiated the suit against her. As was said in *Finance Corp. v. Lane, supra*, at 196-97, 19 S.E. 2d at 853, "[t]here is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint." For that reason, the complaint fails to state a claim for abuse of process.

[7] Plaintiff contends in her brief that even if her allegations fail to state a claim for abuse of process they are sufficient to state a claim for malicious prosecution. The requirements of N.C. R. Civ. P. 8(a) are met when a pleading "gives sufficient notice of the events, or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and—by using the rules provided for obtaining pretrial discovery—to get any additional information he may need to prepare for trial." *Sutton v. Duke*, 277 N.C. 94, 104,

176 S.E. 2d 161, 164 (1970). We note also that N.C. R. Civ. P. 54(c) requires that every final judgment, with the exception of judgments rendered by default, "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Thus when the allegations in the complaint give sufficient notice of the wrong complained of an incorrect choice of legal theory should· not result in dismissal of the claim if the allegations are sufficient to state a claim under some legal theory. Our interpretation of the concept of notice pleading embodied in N.C. R. Civ. P. 8(a) supports that conclusion. *Sutton v. Duke, supra.* We also note that Fed. R.·Civ. P. 8(a)(2), which differs to some extent from N.C. R. Civ. P. 8(a) but which also embodies the concept of notice pleading, has been interpreted in a similar fashion. *See New Amsterdam Cas. Co. v. Waller,* 323 F. 2d 20 (4th Cir. 1963); *Dotschay v. National Mut. Ins. Co.,* 246 F. 2d 221 (5th Cir. 1957); *2A Moore's Federal Practice,* ¶ 8.14, p. 1713 (2d ed. 1975). In order to survive a motion to dismiss, however, the allegations of a mislabeled claim must reveal that plaintiff has properly stated a claim under a different legal theory. We turn now to a consideration of whether the plaintiff's allegations in this instance sufficiently state a claim for malicious prosecution.

[8] To recover for malicious prosecution the plaintiff must show that defendant initiated the earlier proceeding, that he did so maliciously and without probable cause, and that the earlier proceeding terminated in plaintiff's favor. *Cook v. Lanier,* 267 N.C. 166, 147 S.E. 2d 910 (1966); *Fowle v. Fowle, supra; Barnette v. Woody, supra; Abernethy v. Burns,* 210 N.C. 636, 188 S.E. 97 (1936); *Railroad Co. v. Hardware Co.,* 138 N.C. 175, 50 S.E. 571 (1905). At common law a malicious prosecution claim could be brought only on the basis of prior criminal proceedings brought by defendant against plaintiff. *W. Prosser, Torts,* § 120, pp. 850-51 (4th ed. 1971). In a rather large minority of American jurisdictions, however, including North Carolina, the protection afforded by an action for malicious prosecution has been extended to include an action for wrongful institution of civil proceedings. *Brown v. Estates Corp.,* 239 N.C. 595, 80 S.E. 2d 645 (1954); *Nassif v. Goodman,* 203 N.C. 451, 166 S.E. 308 (1932); *Estates v. Bank,* 171 N.C. 579, 88 S.E. 783 (1916); *Ely v. Davis,* 111 N.C. 24, 15 S.E. 878 (1892); *Williams v. Hunter,* 10 N.C. 545 (1825). Those decisions

indicate that when the plaintiff's claim for malicious prosecution is based on the institution of a prior civil proceeding against him he must show not only that defendant initiated the prior proceeding, that he did so maliciously and without probable cause, and that the prior proceeding terminated in plaintiff's favor but also that there was some arrest of his person, seizure of his property, or some other element of special damage resulting from the action such as would not necessarily result in all similar cases. *Carver v. Lykes*, 262 N.C. 345, 137 S.E. 2d 139 (1964); *Jerome v. Shaw*, 172 N.C. 862, 90 S.E. 764 (1916). The gist of such special damage is a substantial interference either with the plaintiff's person or his property such as causing execution to be issued against the plaintiff's person, *Overton v. Combs*, 182 N.C. 4, 108 S.E. 357 (1921), causing an injunction to issue prohibiting plaintiff's use of his property in a certain way, *Shute v. Shute*, 180 N.C. 386, 104 S.E. 764 (1920), causing a receiver to be appointed to take control of plaintiff's assets, *Nassif v. Goodman, supra*, causing plaintiff's property to be attached, *Brown v. Guaranty Estates Corp.*, 239 N.C. 595, 80 S.E. 2d 645 (1954), or causing plaintiff to be wrongfully committed to a mental institution, *Barnette v. Woody, supra*. In the recent case of *Carver v. Lykes, supra*, in which this Court held that a claim for malicious prosecution based on proceedings brought against plaintiff before an administrative board could be maintained, the interference thereby caused by defendant with plaintiff's property right in his license to sell real estate was deemed sufficient to constitute special damages.

[9]   The Court of Appeals found that plaintiff's complaint properly alleged defendant had initiated the prior civil proceeding against plaintiff and that he had done so maliciously and without probable cause. With that conclusion, we concur. The court held, however, that plaintiff's claim was properly dismissed because plaintiff failed to alleged that the prior proceeding had terminated in plaintiff's favor *on the merits*. With this application of the law of malicious prosecution by the Court of Appeals we cannot agree. The requirement that the former proceeding has been terminated favorably to the plaintiff in a malicious prosecution action is satisfied in many instances by a disposition of the proceeding prior to a consideration of the merits. For example, in *Cook v. Lanier, supra*, it was held that plaintiff had sufficiently shown favorable termination of the prior proceeding by showing

that the prior proceeding was dismissed for failure of the complainant to appear and prosecute. *See Winkler v. Blowing Rock Lines*, 195 N.C. 673, 143 S.E. 213 (1928); *Hadley v. Tinnin*, 170 N.C. 84, 86 S.E. 1017 (1915); 52 Am. Jur. 2d, Malicious Prosecution, § 42, pp. 210-11; *Annot.*, 135 A.L.R. 784. Comment (g) to § 674, Restatement of the Law of Torts, endorses the generally accepted rule that for the purpose of maintaining an action for malicious prosecution the prior civil proceeding on which it is based may be terminated in favor of the person against whom it is brought in several ways that do not involve an adjudication on the merits. We think therefore, that it is sufficient for the purpose of withstanding a motion to dismiss under Rule 12(b)(6) that plaintiff in an action for malicious prosecution allege merely that the prior civil proceeding was dismissed.

**[10]** Although we find error in the grounds on which the Court of Appeals affirmed the dismissal of plaintiff's Count Number II, we nevertheless affirm the dismissal on other grounds. The requirement that plaintiff in a malicious prosecution action based on a prior civil proceeding show some special damage resulting therefrom, as discussed *supra*, is an essential, substantive element of the claim. *Sutton v. Duke, supra*, established the principle that despite the liberal nature of the concept of notice pleading, a complaint must nonetheless state enough to give the substantive elements of at least some legally recognized claim or it is subject to dismissal under Rule 12(b)(6). Moreover, N.C. R. Civ. P. 9(g) requires that "[w]hen items of special damage are claimed each shall be averred." Thus "[w]here the special damage is an integral part of the claim for relief, its insufficient allegation could provide the basis for dismissal under Rule 12(b)(6)." *1 McIntosh, N.C. Civil Practice & Procedure*, § 970.20(6), p. 918 (2d ed. 1970 Supp.). Plaintiff's complaint in this instance fails to allege anything which could possibly be construed as special damages as required by the substantive law of malicious prosecution. Paragraph number 6 of her complaint alleges only that "the plaintiff has been damaged in that she has incurred expenses in defending said claim and has suffered embarrassment, humiliation, and mental anguish in the amount of $100,000.00." Such an allegation fails completely to allege a substantial interference with either the plaintiff's person or her property as contemplated by the special damage requirement. Had she alleged the issuance

of a temporary restraining order or something of like nature, the complaint would clearly have been sufficient. But where, as here, the complaint reveals the nonexistence of an essential substantive element of the only legal theory under which plaintiff can proceed, the trial court may properly dismiss it for failure to state a claim for which relief can be granted.

The trial court was correct in dismissing, and the Court of Appeals was correct, for reasons other than stated in the opinion of the Court of Appeals, in affirming the dismissal of plaintiff's claim for abuse of process contained in Count Number II of her complaint. Accordingly, we affirm the Court of Appeals upon this aspect of the case on different grounds for the reasons stated.

[11] The Court of Appeals held that the dismissal of plaintiff's Count Number II was "with prejudice" because in ruling on the 12(b)(6) motion the trial judge examined the pleadings in defendant's suit brought against plaintiff in federal court. A Rule 12(b)(6) motion to dismiss for failure to state a claim is indeed converted to a Rule 56 motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). And a grant of summary judgment operates as a final judgment on the particular claim to which the motion is addressed. There is a multitude of federal cases considering the issue of when a Rule 12(b)(6) motion is converted into a Rule 56 motion for summary judgment by consideration of matters outside the pleadings under the Federal Rules of Civil Procedure. *See Annot.* 2 A.L.R. Fed. 1027. We need not consider at this time, however, what matters outside the pleadings presented to and considered by the court will result in conversion to a Rule 56 summary judgment proceeding. In paragraph (2) of the Count Number II of her complaint, plaintiff specifically incorporated by reference as an exhibit the complaint in the federal court action and a copy of it was attached to her complaint in this action. N.C. R. Civ. P. 10(c) provides in part, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof *for all purposes.*" (Emphasis added.) The complaint in the federal court action was not, therefore, a matter outside the pleadings, and the motion to dismiss under Rule 12(b)(6) remained just that. Should plaintiff be able to state a claim for relief based on the occurrences underlying her allegations in this Count Number II, the dismissal of that

claim under Rule 12(b)(6), which we now affirm, will not affect her right to do so.

Affirmed in part.

Reversed in part.

Remanded to the Court of Appeals for further remand to the Superior Court.

Justices EXUM and BRITT took no part in the consideration or decision of this case.