**Sandra THEARD, Plaintiff–Appellant,**

v.

**GLAXO, INCORPORATED,
Defendant–Appellee.**

No. 94–1124.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1994.

Decided March 3, 1995.

**ARGUED:** Alan McSurely, Chapel Hill, NC, for appellant. Frank Pelouze Ward, Jr., Raleigh, NC, for appellee. **ON BRIEF:** Michael C. Lord, Raleigh, NC, for appellee.

Before WILKINS and LUTTIG, Circuit Judges, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by published opinion. Judge LUTTIG wrote the opinion, in which Judge WILKINS and Senior Judge LAY joined.

## OPINION

LUTTIG, Circuit Judge:

Appellant, Sandra Theard, appeals from an order of the United States District Court for the Middle District of North Carolina granting summary judgment in favor of appellee Glaxo, Incorporated, on Theard's 42 U.S.C.

§ 1981 and state law claims. For the reasons that follow, we affirm.

## I.

Between September 1987 and May 1990, Sandra Theard, a black woman, worked for a North Carolina pharmaceutical corporation, Glaxo, Incorporated. During her tenure at Glaxo, Theard's title and position as an Administrative Assistant II, Grade 13, did not change.

On May 16, 1989, Glaxo posted a notice seeking applicants for a Data Analyst I position, Grade 20. The position required a B.A. college degree and/or relevant experience. Appendix of Exhibits ("A.E.") at 61. Although lacking a degree, Theard appeared to have the relevant experience and she applied. Between November 1989 and January 1990, Glaxo decided to eliminate the Data Analyst I position and to create instead the positions of Market Research Information Analyst I, Grade 21, and Market Research Information Analyst II, Grade 22. The company consequently withdrew the posting for the position that Theard had applied for, and posted instead the Market Research Information Analyst I position, which required a college degree and expertise in specified software. A.E. at 60. Theard did not apply for the newly created position nor was she qualified.

During the fall of 1989, Theard requested permission to take an English class twice a week during the business day at a local university, starting in January 1990. Glaxo had provided Theard with leave to take a mid-day class during the 1989 fall term, upon the condition that permitting it at that time, did not guarantee that the company would allow her to take daytime courses in the future. A.E. at 140. Glaxo concluded that Theard's absence during the workday disrupted business too much and that she was needed in her secretarial duties during the relevant hours. A.E. at 179. Therefore,

Glaxo did not approve Theard's request for the January term, but did offer her a "special accommodation" of flex-time that would have permitted her to take an afternoon class. A.E. at 179. She declined.

Theard resigned from Glaxo in May 1990. In July 1990, she filed a charge against Glaxo with the Equal Employment Opportunity Commission, which investigated the charge and determined that the evidence did not indicate that race was a factor in Glaxo's decisions to deny the requested leave or to reclassify the Data Analyst position. A.E. at 211–12. Theard chose not to file a private Title VII action. Instead, in August 1992, she filed this suit in state court alleging a violation of section 1981 and a state law claim of intentional infliction of emotional distress. Glaxo removed the case to federal court. In July 1993, Glaxo moved for summary judgment, which the district court granted by order on December 9, 1993. Theard now appeals.

## II.

Theard claims that Glaxo racially discriminated against her in the making or enforcement of her employment contract, in violation of 42 U.S.C. § 1981, when the company denied her training opportunities by not approving her request to take a mid-day class, and when the company denied her the opportunity for a promotion by withdrawing the Data Analyst I vacancy and substituting the Market Research Information Analyst I position with qualifications that Theard did not meet.* J.A. at 10.

After the allegedly discriminatory actions occurred, but before Theard filed her claim, amendments to 42 U.S.C. § 1981 were enacted into law as part of the Civil Rights Act of 1991. The district court recognized when it ruled on Glaxo's motion for summary judgment that the question of whether the

---

* In North Carolina, section 1981 claims are subject to a three-year statute of limitation. *Kornegay v. Burlington Indus., Inc.,* 803 F.2d 787, 788 (4th Cir.1986). Since Theard's complaint was filed on August 21, 1992, the basis of her claim is limited to conduct that occurred on or after August 21, 1989.

Theard tries to circumvent the effect of the limitation by raising a continuing tort theory for the first time on appeal. We decline to consider this argument because it was not raised in the district court and Theard has not explained that exceptional circumstances prevented her from raising the issue earlier. *Muth v. United States,* 1 F.3d 246, 250 (4th Cir.1993).

amendments would apply retroactively was then pending before the Supreme Court. As a result, the court declined to rule on the retroactivity question, instead rendering its decision as if the amendments were retroactive. J.A. at 47.

Before the 1991 Act, section 1981 provided in relevant part:

> All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens....

42 U.S.C. § 1981(a). In section 101 of the Act, codified at section 1981(b), Congress for the first time defined the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

■ The district court, of course, could not have known that the Supreme Court would hold in *Rivers v. Roadway Express, Inc.,* — U.S. ——, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), that section 101 "does not apply to cases that arose before its enactment." *Id.* at ——, 114 S.Ct. at 1514. Although the Court was not explicit in its holding as to what it meant by "cases that arose," it equated this holding on section 101 with its holding on section 102 in *Rivers'* companion case, *Landgraf v. USI Film Prods.,* — U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf,* the Court stated that, absent a clear congressional statement to the contrary, a new statutory provision should not be applied retroactively if in so doing it would impose new legal consequences for events completed before the statute's enactment. *See id.* at ———— ———, 114 S.Ct. at 1497–1505; *see also id.* at ———— ———, 114 S.Ct. at 1524–26 (Scalia, J., concurring); *cf. id.* at ——, 114 S.Ct. at 1506 ("The new [compensatory] damages remedy in § 102 ... is the kind of provision that does not apply to *events antedating its enactment* in the absence of clear congressional intent." (emphasis added)). Because the Court in *Landgraf* defined the presumption against retroactivity in terms of the underlying conduct, it is evident that the Court, in regard to

section 101, understood a case to arise when the conduct occurred. In short, section 101 does not apply to cases in which the conduct giving rise to the suit occurred before November 21, 1991, regardless of when the claim was filed. *See Preston v. Virginia ex rel. New River Community College,* 31 F.3d 203, 207 (4th Cir.1994) (The "substantive provisions of §§ 101 and 102 of the [Civil Rights Act of 1991] should not be applied to conduct occurring before the effective date of the [Act]."). The district court, therefore, should have applied the preenactment law and, in particular, that law as interpreted by the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in deciding Theard's section 1981 claim. *See Rivers,* — U.S. at ——, 114 S.Ct. at 1519 ("*Patterson* provides the authoritative interpretation of the phrase 'make and enforce contracts' in the Civil Rights Act of 1866 before the 1991 amendment went into effect on November 21, 1991.").

■ In *Patterson,* the Supreme Court held "that racial harassment relating to the conditions of employment [was] not actionable under § 1981 because that provision [did] not apply to conduct which occur[red] after the formation of a contract and which [did] not interfere with the right to enforce established contractual obligations." *Patterson,* 491 U.S. at 171, 109 S.Ct. at 2369; *see id.* at 179–80, 109 S.Ct. at 2374 (Section 1981 "cover[ed] only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process.").

*Patterson* expressly held that "not [being] offered training for higher level jobs" was "postformation conduct ... relating to the terms and conditions of continuing employment" and, hence, "not actionable under § 1981." *Id.* at 178–79, 109 S.Ct. at 2373–74. Theard, therefore, cannot rely on Glaxo's refusal to allow her to take the mid-day class as the basis of her section 1981 claim.

■ The *Patterson* Court also considered whether a company's allegedly discriminatory refusal to promote was cognizable under section 1981. The Court concluded that such

a claim was "perhaps" within the scope of section 1981, *id.* at 179, 109 S.Ct. at 2374, but "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer...." *Id.* at 185, 109 S.Ct. at 2377. Nowhere in Theard's complaint does she allege that the promotion sought (from Administrative Assistant II, Grade 13, to Data Analyst I, Grade 20) would have created a "new and distinct relation" between her and Glaxo, thereby making it actionable under *Patterson.* However, despite this pleading defect, we shall presume for the purposes of this decision that the section 1981 promotion claim was properly pleaded and that the promotion could have met the "new and distinct relation" requirement as a matter of law.

From this point in the analysis onward, we fully agree with the reasoning of the district court. The district court properly applied the *McDonnell Douglas/Burdine* scheme of proof to Theard's promotion claim. *See Patterson,* 491 U.S. at 186–87, 109 S.Ct. at 2377–78; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The district court found that "[e]ven if the facts here were sufficient to establish [Theard's] *prima facie* case, [Glaxo] ha[d] satisfied its burden of production by articulating several legitimate, non-discriminatory reasons for turning down [Theard] when she sought ... the promotion...." J.A. at 50. As Glaxo explained in memoranda written at the time, the Data Analyst job description was reevaluated because the duties of the job had grown significantly over the years, and the candidates for the Data Analyst vacancy were simply not qualified to meet the expanded responsibilities of the position as it had evolved. A.E. at 204–05. Apparently, reclassifying job descriptions was a common practice at Glaxo; in 1989, approximately 331 jobs were evaluated, of which approximately 30% were upgraded. A.E. at 66. In this instance, the heightened prerequisites disqualified all persons, both black and white, who had applied for the Data Analyst position. A.E. at 66. Thus, Glaxo rebutted the presumption of discrimination established by the *prima facie* case.

For Theard to prevail after Glaxo met its burden of production, she had to prove "*both* that the reason [Glaxo presented] was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). We agree with the district court that Theard offered no direct evidence that Glaxo's articulated reason for not promoting her was a pretext for discrimination, and the circumstantial evidence she proffered was not adequate to create a triable issue. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Since the evidence was not sufficient for a reasonable jury to have concluded that Glaxo's decision not to promote Theard was wrongfully based on race, entry of summary judgment was justified. *See LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 843 (1st Cir.1993) ("[T]he plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994), *quoted in Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 (1st Cir.1994).

III.

Theard also appeals the district court's grant of summary judgment in favor of Glaxo on the state law claim of intentional infliction of emotional distress. To avoid summary judgment on this claim, a plaintiff must point to "specific facts," *Waddle v. Sparks,* 331 N.C. 73, 414 S.E.2d 22, 29 (1992), that show that the defendant displayed "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." *Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325, 335 (1981). For conduct to be "extreme and outrageous," the conduct must exceed "all bounds usually tolerated by a decent society," *Daniel v. Carolina Sunrock Corp.,* 110 N.C.App. 376, 430 S.E.2d 306, 310 (1993) (citations omitted), *rev'd on other grounds,* 335 N.C. 233, 436 S.E.2d 835 (1993); "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *id.* (citation omitted). The conduct that Theard alleges simply does not meet this standard. Nor does she allege emotional distress of the magnitude required to substantiate this claim. *See Waddle,* 414 S.E.2d at 27. Therefore, summary judgment for Glaxo was proper.

## CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

*AFFIRMED.*