**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANK WILSON, JR.,
Plaintiff-Appellant,

v.                                                               No. 94-2247

CIRCUIT CITY STORES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-93-1956-3-19BC)

Argued: January 29, 1996

Decided: April 1, 1996

Before RUSSELL, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ernest Eugene Yarborough, YARBOROUGH & CAR-
TER, P.C., Winnsboro, South Carolina, for Appellant. Laura Eliza-
beth Zoole, NELSON, MULLINS, RILEY & SCARBOROUGH,
L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:**
Henry S. Knight, Jr., NELSON, MULLINS, RILEY & SCARBOR-
OUGH, L.L.P., Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Frank Wilson, Jr., challenges the district court's entry of summary judgment in favor of his former employer, Circuit City Stores, Incorporated. On appeal, Wilson alleges that Circuit City took disciplinary measures against him and discharged him because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2(a) (West 1994), and 42 U.S.C.A.§ 1981 (West 1994), and he contends that the district court was biased against his claims. Because Wilson has failed to demonstrate a prima facie case of either disparate discipline or discriminatory discharge and has failed to show judicial bias, we affirm.

I.

Wilson, a black male, was an employee of a Circuit City store in Columbia, South Carolina, from 1986 until his suspension and discharge in May 1992. During those six years, Wilson advanced from the position of sales counselor to sales manager of a department of the store.

Around September 1991, Wilson's supervisors began to receive numerous complaints about Wilson's use of vulgar and profane language with sales associates in private and in the presence of store customers. On at least four occasions over the course of several months, Wilson's supervisors admonished him in writing to curtail his abusive language.

In addition, Wilson had a documented history of poor job performance as a sales manager. In February 1992, two of Wilson's supervisors completed a Circuit City "Progress Conference Form" and rated Wilson's performance in nine of twelve categories as "marginal" or "unacceptable." (J.A. at 104-05.) Conceding his shortcomings, Wil-

2

son acknowledged his substandard performance and the need to strengthen "associate relations." (J.A. at 105.) In March and April 1992, Wilson received three written warnings that his performance was unsatisfactory. In those warnings, Wilson's supervisors set forth corrective measures that Wilson should take to improve his performance.

Subsequently, Trent Barnes, a Circuit City district sales manager, suspended Wilson with pay while Barnes investigated a complaint that Wilson used profanity in a conversation with a sales associate. The sales associate did not recall the specific incident, but told Barnes that Wilson habitually used profanity on the sales floor of the store. Based on his investigation, Barnes recommended that Circuit City terminate Wilson's employment because of his "unacceptable behavior" and overall substandard performance. (J.A. at 122.) After reviewing Barnes's recommendation to terminate Wilson, several senior Circuit City managers in the Human Resources Central Division approved Wilson's discharge, and Wilson was fired on May 13, 1992.

Wilson filed this action in the district court for the District of South Carolina, alleging that his suspension and discharge constituted unlawful race discrimination in violation of Title VII and § 1981. Wilson also claimed that his discharge constituted an unlawful breach of contract and defamation of character under state law, allegations that he does not raise on appeal. The district court entered summary judgment for Circuit City on all claims, and Wilson timely noted appeal of the ruling with respect to his federal claims.

II.

We review the district court's grant of summary judgment de novo. See Hughes v. Bedsole, 48 F.3d 1376, 1382 (4th Cir.), cert. denied, 116 S. Ct. 190 (1995). In so doing, we view the facts and draw all reasonable inferences in Wilson's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). We note, however, that under Rule 56(e) of the Federal Rules of Civil Procedure, Wilson could not rest on "mere allegations or denials" of Circuit City's pleadings to defeat its motion for summary judgment; Wilson could survive summary judgment only by submitting affidavits or other evidence that "set forth specific facts showing that there is a genuine issue for trial."

3

Fed. R. Civ. P. 56(e); see Theard v. Glaxo, Inc. , 47 F.3d 676, 680 (4th Cir. 1995) (noting that plaintiff must point to"specific facts" supporting each element of prima facie case in order to avoid summary judgment). In other words, Wilson had to produce evidence from which a rational jury could conclude that Circuit City disciplined or fired Wilson because of his race. See Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Under these standards, we conclude that summary judgment was proper because Wilson failed to set forth a prima facie case of disparate discipline or discriminatory discharge under either Title VII or § 1981. Both statutes require the same elements of proof. See Gairola v. Commonwealth of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). We first turn to Wilson's disparate discipline claim and then evaluate his discriminatory discharge claim.

A.

To state a claim based on disparate discipline, Wilson had to show (1) that he is a member of a protected class; (2) that employees outside the protected class engaged in comparable misconduct; and (3) that the disciplinary measures enforced against Wilson were more severe than those enforced against the other employees who engaged in comparable misconduct. See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). Wilson's evidence falters at the second element of his claim; he cannot point to specific facts showing that other Circuit City managers engaged in comparable misconduct.

Wilson does not dispute that he used profanity in conversations with sales associates and performed below Circuit City standards. Rather, Wilson alleges that other sales managers also used profanity and performed poorly, but were not similarly disciplined or discharged. Specifically, Wilson contends that a white sales manager at the same Circuit City store, Jim Remole, used abusive language but was not reprimanded. The store manager, Dennis Letts, testified in his deposition that he heard Remole use "abusive language," but did not counsel Remole to refrain from using the language in the future. (J.A. at 74.)

4

As the district court observed, however, Wilson produced no records, testimony, or any other evidence showing that Circuit City received complaints about the use of profanity by Remole or any employee other than Wilson. Although Letts acknowledged that several employees had used abusive language on occasion, he testified that he had never received "any kind of written complaint" from a sales associate about any manager other than Wilson. **1** (J.A. at 79). Wilson produced only his own self-serving testimony to substantiate the claim that other managers had the same poor performance record as Wilson, but were not disciplined. Additionally, Wilson's counsel conceded during the summary judgment hearing before the district court that no other employee had the same record as Wilson. The second element of Wilson's prima facie case of disparate discipline thus stands wholly unsupported.

Wilson nevertheless suggests that the evidence gives rise to an inference that Circuit City suspended and discharged Wilson because of his race. No such inference arises from Wilson's unsupported allegations that other managers engaged in comparable misconduct. As we have long recognized, "mere speculation or the building of one inference upon another" cannot create a genuine factual dispute precluding summary judgment. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985); see Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994) (noting that "general allegations do not suffice to establish an actionable claim" of discriminatory treatment). Rather, Wilson's burden was "to prove a set of circumstantial facts, which in the absence of a legitimate, non-discriminatory explanation, leads one to conclude with reasonable probability that the action taken against him was the product of discrimination," Cook, 988 F.2d at 512, which Wilson failed to do.**2** Because Wilson lacks evidentiary support for the second

_____

**1** In contrast, at least three sales associates submitted written complaints about Wilson, describing his behavior towards them as demeaning, dehumanizing, and unprofessional, and characterizing his language as profane and degrading. One former employee attested in an affidavit that he voluntarily terminated his employment with Circuit City"based entirely on" Wilson's mistreatment of him. (J.A. at 206.)
**2** Because Wilson did not prove such a set of facts, the burden never shifted to Circuit City to rebut a presumption of discrimination that would arise out of a prima facie case. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Therefore, to the extent that Wilson argues that Circuit City has not discharged its burden of rebuttal, his argument is misplaced.

5

element of his claim, we agree with the district court that no rational jury could find that race was more likely than not a motivating factor in suspending or firing Wilson, and summary judgment on his disparate discipline claim was therefore proper.

B.

For similar reasons, summary judgment on Wilson's discriminatory discharge claim also was proper. To establish a prima facie case that Circuit City fired Wilson because of his race, he had to set forth specific facts showing that: "(1) [ ]he is a member of a protected class; (2) [ ]he was qualified for his job and his job performance was satisfactory; (3) [ ]he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." Hughes, 48 F.3d at 1383 (noting female plaintiff opposing summary judgment had to "eliminate concerns that she was fired because of her performance or qualifications").

Wilson failed to demonstrate any genuine issue of material fact regarding the second element of this claim; he does not refute his record of unsatisfactory job performance. As noted, Wilson's supervisors evaluated him three months before his discharge and rated his performance in nine of twelve categories as "marginal" or "unacceptable." (J.A. at 104-05.) In fact, Wilson acknowledged his substandard performance on the same evaluation sheet. Furthermore, during the two months before his discharge, Wilson received three written warnings that his performance was unsatisfactory, but he failed to improve. Evaluating this evidence, any rational trier of fact would conclude that Wilson's job performance was deficient, a fatal flaw in his prima facie case. Cf. Ennis v. National Ass'n of Business & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995) (affirming summary judgment for employer in a case arising under the Americans with Disabilities Act, 42 U.S.C.A. § 12112 (West 1995), because plaintiff's "poor performance was so substantial and persuasive that no reasonable jury could find by a preponderance of the evidence that she was performing her job adequately"). Summary judgment on Wilson's discriminatory discharge claim was therefore proper.

III.

Finally, Wilson contends that the district court denied him a fair hearing because the court was biased against his claims. To advance

6

this contention, Wilson relies on <u>Crandell v. United States</u>, 703 F.2d 74, 78 (4th Cir. 1983), in which we held that a district judge had abdicated his duty to adjudicate "dispassionately, fairly, and impartially" because he persistently interjected opinions about the case during trial and interrupted the testimony of witnesses.

After carefully reviewing the record, we conclude that Wilson's challenge to the summary judgment ruling on the basis of judicial misconduct is meritless. Wilson received the fair, if not perfect, hearing to which he was entitled, <u>see United States v. Blevins</u>, 960 F.2d 1252, 1254 (4th Cir. 1992), and the district judge served his judicial function commendably. The record of the summary judgment hearing reflects the district judge's thorough familiarity with the parties' briefs, supporting affidavits, pleadings, and depositions. Unlike the district court in <u>Crandell</u>, the district court in this case afforded Wilson every opportunity to present all of the evidence he could muster in support of his claims. The district judge's comments to Wilson's counsel reflected the court's reasoned view of the merits of Wilson's claim, not any personal bias against Wilson. <u>See People Helpers Found. Inc. v. City of Richmond</u>, 12 F.3d 1321, 1325 (4th Cir. 1993) (noting that an alleged bias must arise from a "basis other than that learned by the judge in his or her participation in the matter").

IV.

For the foregoing reasons, we affirm the decision of the district court granting summary judgment to Circuit City.

<u>AFFIRMED</u>

7