LARAINE B. RUSH v. LIVING CENTERS-SOUTHEAST, INC., D/B/A BRIAN CENTER HEALTH & REHABILITATION/HENDERSONVILLE AND WILLIAM T. HALL

No. COA99-31

(Filed 2 November 1999)

**1. Employer and Employee— wrongful discharge—employee's refusal to testify—no public policy violation—matters concerning job duties**

   The trial court did not err in granting defendant-employer's summary judgment motion on plaintiff-bookkeeper's claim that she was wrongfully discharged in violation of public policy for refusing to testify in defendant's dispute with a deceased patient's spouse over an unpaid account because an employer may reasonably expect that its employees will voluntarily appear on its behalf to testify about matters associated with their job duties.

**2. Employer and Employee— wrongful discharge—employee's refusal to testify—no risk of perjured testimony—no public policy violation**

   The trial court did not err in granting defendant-employer's summary judgment motion on plaintiff-bookkeeper's claim that she was wrongfully discharged for refusing to testify in defendant's dispute with a deceased patient's spouse over an unpaid account, even in light of her contention that her participation might have caused her to perjure herself, since: (1) plaintiff admitted that she was neither asked to lie nor given any direction by defendant's lawyers on the content or manner of her testimony; (2) defendant's insistence that plaintiff appear in court without more preparation is not enough to find a public policy violation; and (3) plaintiff needs more evidence than just her subjective feelings that she was being directed to testify untruthfully in order to state a valid claim for wrongful discharge.

RUSH v. LIVING CENTERS-SOUTHEAST, INC.

[135 N.C. App. 509 (1999)] ·

Appeal by plaintiff from a judgment entered 26 August 1998 by Judge Ronald K. Payne in Henderson County Superior Court. Heard in the Court of Appeals 23 September 1999.

On 5 October 1989 Laraine Rush (plaintiff) began her employment with Brian Center (defendant) as a bookkeeper. Her duties included making entries of payments, keeping track of monies owed, and making occasional phone calls in attempts to collect those sums. During her tenure, a dispute arose between defendant and Mr. Sidney Murphy regarding the amount, if any, owed on the bill of his late wife. Defendant filed suit against Mr. Murphy in Henderson County Superior Court. Arbitration was ordered, and plaintiff appeared on behalf of Brian Center in her capacity as bookkeeper and custodian of records and testified concerning the Murphy account. The arbitrator found in favor of Mr. Murphy and Brian Center appealed to the Henderson County Superior Court.

Nearly a year passed during which time plaintiff heard nothing more concerning the Murphy case. On 11 March 1996, Ms. Rush received a phone call late in the afternoon informing her that she was required to appear in court the next day at 9:00 a.m. in order to testify on behalf of defendant in the trial of the case against Mr. Murphy. Plaintiff refused to testify because she did not feel she had adequate time to prepare to testify in an involved matter. When again requested by her immediate supervisor to appear in court the following day, plaintiff again refused, maintaining that there was difficulty in establishing payment dates and any amount owed on such short notice. In her deposition plaintiff stated:

> I told him I didn't wanna do it; I wasn't gonna do it and that I was not going to go in there unprepared and not be able to answer the questions and he told me that I knew that he knew, I knew what he meant when he said that I was gonna go to court and that I was to cooperate. And by him telling me that, you know what I mean, I know that he meant for me to do it, no matter what it took it, [sic] how I was to get there.

Ultimately, plaintiff was told to leave whatever documentation she had in a box for her supervisor to retrieve. Plaintiff did not appear in court the next day, nor did she appear later in the week when the Murphy case was tried. Judgment was entered in favor of Mr. Murphy. Plaintiff was suspended during a two-day investigation into her actions. She was then informed that her employment with Brian Center was terminated on grounds of insubordination.

Plaintiff subsequently filed suit against defendant alleging claims for wrongful discharge, corporate negligence and civil rights violations. Defendant moved for summary judgment and the trial court, finding that no genuine issue of material fact existed as to any of plaintiff's claims, found in favor of defendant. From the orders granting summary judgment, plaintiff now appeals.

*Waymon L. Morris, P.A., by Waymon L. Morris, for plaintiff appellant.*

*Ball, Barden & Bell, P.A., by Ervin L. Ball, for defendant appellee.*

HORTON, Judge.

[1] The issue before this Court is whether or not the trial court erred in granting summary judgment in favor of defendant on plaintiff's claim that she was wrongfully discharged.

Summary judgment is proper when the moving party establishes that no "triable issue" exists "by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Branks v. Kern*, 320 N.C. 621, 623, 359 S.E.2d 780, 782 (1987). Furthermore, "[a]ll inferences are to be drawn against the moving party and in favor of the opposing party." *Id.* at 624, 359 S.E.2d at 782. The trial court must view the evidence presented in the light most favorable to the nonmoving party. *McMurry v. Cochrane Furniture Co.*, 109 N.C. App. 52, 54, 425 S.E.2d 735, 736 (1993). Thus, we must decide whether the evidence, when viewed in the light most favorable to plaintiff, was sufficient to establish a genuine issue of material fact. We hold that it was not, and affirm the judgment of the trial court.

Defendant argues that plaintiff was an employee-at-will and thus could be fired for an arbitrary or irrational reason, or for no reason at all. Plaintiff contends that, although her employment was at-will, her employment contract was terminated in violation of public policy.

It is well settled in this state that the "common law rule . . . is that when a contract of employment does not fix a definite term the employment is terminable without cause at the will of either party." *Sides v. Duke University*, 74 N.C. App. 331, 336, 328 S.E.2d 818, 822-23, *disc. reviews denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). Recognizing the changing nature of employee-employer relationships, the courts of this state have carved out an exception to this rule. The

public policy exception acknowledges that "while there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." *Id.* at 342, 328 S.E.2d at 826; *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989).

*Sides* and *Coman* were similar in that they both involved allegations that the employer affirmatively instructed the employees in those cases to violate the law. In *Sides*, the plaintiff alleged that her employer pressured her not to testify truthfully in a malpractice case, and discharged her because she refused to commit perjury and testified truthfully in the case. Similarly, the plaintiff in *Coman* alleged that he was fired when he refused to falsify federally required documents in violation of federal law. However, the case before us is distinguishable from these two cases.

When viewed in the light most favorable to plaintiff, the evidence tends to show that plaintiff's employer was involved in a dispute over an unpaid account with the spouse of a deceased patient; that plaintiff had previously participated in an ordered arbitration of the dispute in her capacity as bookkeeper for defendant; that this involvement left plaintiff hesitant to participate in such events in the future; that defendant appealed the decision of the arbitrator to the superior court; that plaintiff was unaware of the appeal and assumed the case was over; that almost one year later, defendant contacted plaintiff late one afternoon and instructed her to appear in court the next morning to testify in the pending case against Mr. Murphy; that plaintiff refused that request more than once, stating that it was a complex matter, and she did not have adequate time to prepare her testimony; that the case was tried without her participation; that plaintiff was then suspended pending an investigation and was ultimately terminated on grounds of insubordination.

Plaintiff argues that her termination violated the public policy exception to at-will employment because she was not subpoenaed and therefore was not required to appear in court; furthermore, that insistence that she testify without more time to prepare would have prevented her from giving "full, fair, and accurate" testimony. We are not persuaded by these arguments.

While the statutory law provides a mechanism whereby litigants may compel attendance of witnesses who might not otherwise voluntarily appear, it does not require that every prospective witness be

subpoenaed. *See* N.C. Gen. Stat. § 1A-1, Rule 45 (1990). Thus, an employer may reasonably expect that its employees will voluntarily appear on its behalf to testify about matters associated with their job duties. However, as discussed above, an employer may not insist that an employee appear and testify untruthfully.

**[2]** Second, plaintiff's contention that defendant's insistence upon her participation might have caused her to perjure herself is not supported by the record. In her deposition, plaintiff admitted that she was neither asked to lie nor given any direction by defendant's lawyers on the content or manner of her testimony. We find the following excerpt from her deposition particularly telling:

> Q. Alright. Did anybody from Brian Center tell you to go to testify, that you had to lie?

> A. Uh, it was inferred, go and do what you have to do. Go to court.

> Q. Okay. What did they say to infer that?

> A. Well, Mr. Hall said just answer the questions and even when I told him, I couldn't.

> Q. Just answer the questions. That's what he said that you inferred that he wanted you to lie from?

> A. Well, I don't know if he wanted to say, he didn't say the word lie, but it was sort of go and answer.

When plaintiff was given the opportunity to explain her understanding she further stated:

> A. When he called me, okay, he called me and I told him, you know, what I was gonna testify; I told him about the, you know, about my having everything at hand, how long it was gonna take me; I told him I couldn't give fair testimony; I told him I didn't wanna do it; I wasn't gonna do it and that I was not going to go in there unprepared and not be able to answer the questions and he told me that I knew that he knew, I knew what he meant when he said that I was gonna go to court and that I was to cooperate. And by him telling me that, you know what I mean, I know that he meant for me to do it, no matter what it took it, [sic] how I was to get there.

Defendant's insistence that plaintiff appear in court without more preparation is not enough for this Court to find a public policy viola-

tion. Without some evidence which would cause a reasonable employee to have a like understanding, we cannot hold that plaintiff states a valid claim against defendant for wrongful discharge based on her subjective "feelings" that she was being directed to testify untruthfully. In *Daniel v. Carolina Sunrock Corp.*, 110 N.C. App. 376, 430 S.E.2d 306, *rev'd in part*, 335 N.C. 233, 436 S.E.2d 835 (1993), we held in a divided decision that the plaintiff stated a claim for wrongful discharge where she was instructed by her employer not to "say anymore than she had to" when testifying in a case involving the employer, and to " 'remember that you work for me and represent me and my company.' " *Id.* at 380, 430 S.E.2d at 309. The plaintiff in *Daniel* considered the statements by her employer to be both threats and pressure to alter her testimony, if necessary. *Id.*

In a dissent, Judge Lewis reasoned that

if such innocuous statements as this are sufficient to support a claim for wrongful discharge, then employers will have to stand mute when faced with a similar situation for fear that no matter what they say their employees may perceive it as a threat. Surely an eggshell sensitivity of perception should not override the rule of reasonable application. Such a result would take the public policy exception too far . . . .

*Id.* at 385, 430 S.E.2d at 312. The dissent also pointed out that more than a year lapsed before Ms. Daniel was discharged from her employment with defendant. Our Supreme Court reversed the majority decision and adopted the reasoning set out in the dissent. *Daniel v. Carolina Sunrock Corp.*, 335 N.C. 233, 436 S.E.2d 835 (1993).

The language of *Daniel* seems particularly appropriate for application to the case before us. We are persuaded that, even if the testimony of plaintiff is taken as entirely true, a reasonable employee would not have understood the employer's statements to plaintiff to be directives that she testify untruthfully in the case against Mr. Murphy. Therefore, plaintiff's perceptions, being unsupported by evidence of record, are insufficient for us to find that her discharge contravened the public policies of this state.

The judgment of the trial court is

Affirmed.

Judges WYNN and EDMUNDS concur.