**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LESLIE A. ROSS,
<u>Plaintiff-Appellee,</u>

v.

SAINT AUGUSTINE'S COLLEGE, a Non-
profit Corporation; DWIGHT J. FENNELL,
individually and in his official capacity
as Vice-President for Academic
Affairs, Saint Augustine's College;
GREGORY P. SLIGH, individually and in
his official capacity as Senior Class
Advisor, Saint Augustine's College;
JAMES E. BURT, individually and in his
official capacity as Senior Class
Advisor, Saint Augustine's College,
<u>Defendants-Appellants,</u>

and

PREZELL R. ROBINSON, individually and
in his capacity as President, Saint
Augustine's College; MARSHALL W.
HARVEY, individually and in his official
capacity as Registrar, Saint
Augustine's College; CHARLES R.
EDWARDS, individually and in his
official capacity as Supervisor of
Postal Services, Saint Augustine's
College; RICHARD L. MOORE, JR.,
individually and in his official capacity
as Coordinator, Division of Social
Sciences, Saint Augustine's College;
UNKNOWN PERSONS,
<u>Defendants.</u>

No. 95-1949

Appeal from the United States District Court
for the Eastern District of North Carolina at Raleigh.
W. Earl Britt, District Judge.
(CA-93-616-5-BR)

Argued: September 27, 1996

Decided: December 27, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Charles Theophilus Francis, WOOD & FRANCIS,
P.L.L.C., Raleigh, North Carolina, for Appellants. Theaoseus Thea-
boyd Clayton, Jr., CLAYTON & BANKS, P.A., Raleigh, North Caro-
lina, for Appellee. **ON BRIEF:** Bryan E. Wardell, CLAYTON &
BANKS, P.A., Raleigh, North Carolina; Willie O. Dixon, IV, TODD,
PARHAM, HARRIS & DIXON, P.L.L.C., Raleigh, North Carolina,
for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

After Leslie A. Ross testified against St. Augustine's College in a
successful reverse discrimination case by one of its professors, her
fortunes as a student at the college changed dramatically. She sued the
college and seven of its officers and professors for retaliation, and
after a two-week trial, a jury found against St. Augustine's College
and three other defendants, awarding her compensatory and punitive
damages for reckless infliction of emotional distress.

2

On appeal, the defendants challenge various evidentiary and trial rulings made by the district court and contend that the evidence does not support the verdict. Finding none of the contentions meritorious, we affirm.

I

As Leslie Ross approached the last semester of her four years at St. Augustine's College, she had compiled a nearly perfect (3.969/4.0) grade point average, having received all A's except for one B (in her first year). She had been elected president of her senior class and had been selected for membership in several honor societies. She earned a position on the Dean's List and residency in the Honors Dormitory. Upon graduation from St. Augustine's College, she planned to attend law school.

In the last semester of her senior year, Ross was subpoenaed to testify in a reverse discrimination case brought by Professor Allen Cooper, Ph.D., against St. Augustine's College. The Cooper trial involved charges of racial discrimination, inflaming and dividing the faculty and students at the historically black institution. Before giving testimony in the Cooper case, one of the St. Augustine's administrators allegedly approached Ross and urged her to find a means to avoid testifying. He also requested that she provide the administration with a summary of her testimony before trial. Ross refused the requests and testified on behalf of Cooper who ultimately obtained a $745,000 verdict against the college.

After giving testimony on behalf of Professor Cooper, Ross experienced a sudden reversal of fortune at St. Augustine's College. Her transcripts began to show mysteriously fluctuating grades and, at one point, her cumulative grade point average appeared to be as low as 2.2. She received five F's and one B in her final semester, and two earlier incompletions were changed to failing grades. The Social Science division and Political Science Department withheld top student honors from her. In the last days before the end of the school year, the administration called a meeting of the student body to impeach her as class president, without having given her notice of the impeachment proceedings or an opportunity to respond to the charges against her. Throughout the period of these events, Ross met with var-

3

ious members of St. Augustine's administration and was allegedly falsely assured that they would correct her grades and fix the other problems in time for graduation. No adjustments were made, however, and Ross did not graduate. As a result of these events, Ross sustained emotional distress and psychological injury for which she still receives psychiatric treatment.

Ross filed this action in October 1993 under 42 U.S.C. §§ 1985(2), 1985(3), and 1986. She also alleged several common law torts including intentional and negligent infliction of emotional distress.

At trial, Ross testified as the last witness in her case and, on the advice of her psychiatrist, missed most of the trial. Before she took the witness stand, several other witnesses testified about what Ross had said and done during the spring of 1993 in response to St. Augustine's College's actions. The district court described the hearsay testimony of these witnesses as "corroborating" testimony and admitted it over the defendants' objections. After Ross testified, the defendants cross-examined her intensely for four days with attacks on her academic, moral, and personal character in an effort to support their contention that Ross fabricated her oppression to hide her own irresponsible behavior. During cross-examination, trial was recessed several times to allow Ross to compose herself after uncontrollable sobbing.

The jury rendered a verdict in favor of four defendants. It also found in favor of all defendants on the claims of witness intimidation and conspiracy to retaliate against Ross in violation of the Civil Rights Act. But the jury found in favor of Ross against the four remaining defendants, including St. Augustine's College, based on their reckless infliction of emotional distress. The jury awarded Ross $150,000 in compensatory damages and $30,000 in punitive damages, and the district court awarded Ross costs and prejudgment interest. This appeal followed.

II

As their principal point of appeal, the defendants contend that on at least 29 occasions,[1] the district court admitted hearsay statements

_____

[1] Appellants claim 29 such statements but provide support for only a few more than half that number. They provide only 24 record citations

in violation of Federal Rule of Evidence 801(d)(1)(B) (permitting admission of prior consistent statements of witness only to rebut charge of recent fabrication or improper motive) and our decision in United States v. Bolick, 917 F.2d 135 (4th Cir. 1990) (prohibiting admission of bolstering hearsay until witness has been impeached). Despite defendants' objections, the district court admitted testimony that related what Ross had said during the alleged period of retaliation at St. Augustine's College for the purpose of corroborating Ross' promised testimony.**2** In doing so, the court instructed the jury as follows:

_____

in the relevant footnote of their brief. Moreover, their list of 24 includes a citation to a period of the trial during which the jury was absent, J.A. 648, to instances in which the trial court sustained defendant's objection, J.A. 677, 791, and to several occasions when appellants failed to preserve the issue by objecting. See, e.g. , J.A. 664, 812, 848, 884, 899, 1107-08, 1239K.

**2** The statements to which objection has been preserved are:

Ross appeared concerned that "the grades that she had . . . gotten had been changed" and that other actions had been taken against her. J.A. 816.

Ross did not want to send a transcript to law schools which did not reflect her true level of accomplishment. J.A. 664.

Ross was concerned about difficulty she was experiencing in obtaining proper credit for classes which she had taken while in England and appeared afraid that "if she did not receive the credits she felt she was entitled to and [was] told she could be expected to add to her record, that she would not graduate in time." J.A. 814-15.

Ross "felt that she had been pressured [about her testimony in the Cooper trial]; that actions had been taken against her for her participation in the suit." J.A. 815-16.

Ross believed that Defendant Edwards had opened her mail. J.A. 817.

Ross believed that she would fit in at a historically black college, that she "had a personal commitment to support institutions like that." J.A. 819.

After the problems at St. Augustine's College began, Ross "started complaining of mediastinum pains." J.A. 885.

5

Members of the Jury, what this witness has previously testified to and is now being asked to testify to[is] something that Miss Leslie Ross told him. Ordinarily that would not be admissible because it is hearsay. It is something she said out of the courtroom and it is not admissible here.

However, I have been assured by counsel for plaintiff that Miss Ross will testify in this case. This witness can testify as to things that Miss Ross told him for the purpose of corroborating, if you find in fact that it does corroborate, what Miss Ross herself will testify to.

Ordinarily that sequence of events is [that] she would testify first and he later. But in order to expedite trial, I am going to allow him to go ahead and testify to these things. But it is received solely for the purpose of corroborating what Miss Ross later testifies to herself, if you find in fact that it does corroborate what Miss Ross testifies to.

Defendants contend that because Ross offered the statements to "corroborate" her assertions and to bolster her credibility, they were admissible under Federal Rule of Evidence 801(d)(1)(B) only if Ross' credibility had been attacked. Since she had not yet testified, they argue, the district court should not have admitted the statements in evidence.

A

Under Federal Rule of Evidence 801(d)(1)(B), a prior out-of-court statement offered for the truth of the matter asserted is admissible if

_____

After receiving what she believed to be previously opened mail, Ross "began ranting and raving" J.A. 1103.

Ross "had plans to go to Mort's [trophy store] . . . and pick out the senior class awards," making her absent from the meeting at which she was impeached. J.A. 1110-11.

Ross said "There is so much pressure on me not to testify" and said that the administrator had told her that "she should rot in jail before she testified against St. Aug[ustine's College]." J.A. 1117.

6

it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." But admission of such corroborating statements before the impeachment of the declarant may constitute reversible error. See Bolick, 917 F.2d at 138; United States v. Lowe, 65 F.3d 1137, 1144 (4th Cir. 1995) ("[c]orroborative testimony consisting of prior, consistent statements is ordinarily inadmissible unless the testimony sought to be bolstered has first been impeached" (citation omitted)).

In Bolick, we determined that the error in failing to obey the requirements of Rule 801(d)(1)(B) constituted reversible error because "the government's entire case against Bolick" consisted of peremptorily bolstered statements from declarants whose "character for veracity . . . was extremely doubtful." 917 F.2d at 140. Our ruling was aimed at a trial strategy in which the government "attempt[ed] to minimize the unpalatability of its witnesses" by substituting the statements of a federal agent for the statements of three felons, two of whom were testifying on behalf of the government in exchange for recommendations of a reduced sentence. Id. at 136. As the court noted, the declarants in Bolick, "might well have worn signs saying, `Impeach me.'" Id. The policy of our rule in Bolick also recognizes that a jury would find it nearly impossible to "absorb the distinction between prior consistent statements as substantive evidence and such statements as rehabilitation" and then "to condition registration in his mind of each of the declarations on whether the declarant ultimately so testified and whether . . . counsel subsequently impeached" the declarant. Id. at 140.

In the case before us, none of the risks that Bolick sought to forestall were present. The statements attributed to Ross were already bolstered by other extensive documentary evidence, and, as promised, Ross was subjected to extensive cross-examination on every statement attributed to her. Ross was merely allowed to replace her testimony temporarily with testimony of persons with a similar character for veracity, namely three of Ross' professors and a fellow student. Moreover, Ross as the declarant of many of the "corroborating" statements was absent not through an attorney's tactics but because of the advice of her psychiatrist, and she was found by the jury to be resistant to the defendants' substantial efforts to impeach her. When Ross

7

was cross-examined for four days at the conclusion of her case-in-chief, no admitted "corroborating" hearsay statement was left unlinked to impeachment efforts by the defendants.

Thus, while the district court violated the sequence required by Rule 801(d)(1)(B) and <u>Bolick</u>, the violation did not, in this case, affect the "substantial right" of a party. See Fed. R. Evid. 103(a). Accordingly, we conclude that any trial error was harmless.

B

The district court had other grounds on which it might have admitted the challenged statements by considering whether they were hearsay at all or, if hearsay, whether they fell within other exceptions to the hearsay rule. Several of the admitted "corroborating" statements relate to witnesses' direct observations of Ross at the time she felt the retaliation. For example, witnesses testified that Ross appeared concerned and fearful about what the college was doing to her and that she began "ranting and raving." Statements that convey direct observations of the physical appearance and actions of another person are not hearsay at all, but rather direct evidence of the facts in question. Although the trial court should not allow such direct observations to create a back door for otherwise inadmissible hearsay, the trial court could have allowed as direct evidence those portions of such statements which merely reported Ross' appearance, emotional state, and actions which the witnesses personally observed.

The district court could also have considered whether hearsay statements about what Ross said fell within established exceptions because they described or explained Ross' then existing state of mind, emotional condition, or mental feelings. Such statements could well have been admitted under Federal Rules of Evidence 803(1) and 803(3).**3**

_____

**3** Fed. R. Evid. 803(1) excepts from hearsay "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." And Fed. R. Evid. 803(3) creates a hearsay exception for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ."

8

These rules provide an exception to the hearsay rule because the "substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." Fed. R. Evid. 803 advisory committee's notes; see also 6 Wigmore, Evidence § 1714, at 90-97 (Chadbourne rev. 1976) (describing the practical necessity of relying on the declarant's own descriptions of personal condition). For instance, at the trial witnesses testified that at the time of the alleged retaliation Ross felt that she had been pressured about her testimony in the Cooper trial; that she had expressed her fear and belief that an administrator had opened her mail; and that she started complaining of mediastinum pains. While witnesses' statements, such as these, about what Ross had said earlier are probably hearsay, they are undoubtedly probative of what Ross believed at the time about her persecution and her then existing state of mind in response to the persecution. Such statements would be relevant to her emotional distress claims.

Admission of the challenged statements under Federal Rules of Evidence 803(1) and 803(3) also would not have been unfair to the defendants in this case because they had the ability to cross-examine Ross concerning the statements when she later testified. While defendants did lose the ability to cross-examine Ross as the declarant when the jury first heard Ross' words, they also had the ability to cross-examine the witnesses concerning the circumstances surrounding the statements, a rehabilitative mechanism that the Civil Rules Advisory Committee clearly contemplated. See Federal Rule of Evidence 803 advisory committee's notes (noting in regard to statements admissible under Federal Rule of Evidence 803(1) & (2), "if the witness is not the declarant, he may be examined as to the circumstances as an aid in evaluating the statement").

Had the court chosen to admit hearsay statements under the hearsay exceptions in Federal Rules of Evidence 803(1) & (3), an instruction limiting such evidence to its proper purposes would have been available at least for the statement attributed to defendants that "[Ross] should rot in jail before she testified against St. Augustine's College." See Fed. R. Evid. 105. But Ross was allowed to testify about this statement herself without objection, and therefore the absence of a limiting instruction was harmless. Cf. Shepard v. United States, 290 U.S. 96, 103 (1933).

9

In the circumstances of this case, accordingly, we conclude that the district court committed no reversible error in its evidentiary rulings at trial.

III

The defendants next contend that the district court erred in denying their motions for judgment as a matter of law because the evidence was insufficient to support a jury's verdict on the plaintiff's reckless infliction of emotional distress claim.

In North Carolina, a plaintiff may prove the tort of infliction of emotional distress by showing either that the defendant engaged in "extreme and outrageous conduct, which is <u>intended</u> to cause and does cause severe emotional distress to another" <u>or</u> the "defendant's actions indicate a <u>reckless indifference</u> to the likelihood that they will cause severe emotional distress." <u>Dickens v. Puryear</u>, 276 S.E.2d 325, 335 (N.C. 1981) (emphasis added).

If we credit, as we must in the case's present posture, the testimony of Ross and other witnesses testifying on her behalf, ample evidence was presented from which a reasonable jury could have concluded that St. Augustine's College, acting through its administrators, was recklessly indifferent to the likelihood that its actions would cause Ross severe emotional distress. Specifically, evidence presented at trial showed that Professors Gregory Sligh and James Burt, the two senior class advisers, disregarded appropriate procedures for impeaching a class president and initiated the vote to impeach Ross while Ross was out buying awards for her fellow graduating seniors. Similarly, the evidence allows an inference that Dr. Fennell, the Vice President for Academic Affairs, was involved in altering or at least refusing to correct Ross' transcripts. For example, at one of the meetings shortly before graduation, Dr. Fennell, in the presence of others, presented Ross with a transcript bearing her name, about which Ross testified, "All I could see were F's on the transcript." She testified that after showing Ross that transcript, Dr. Fennell looked up and smiled, stating, "Mr. President, she will not be graduating." Ross thereupon became distraught and started "yelling and carrying on." While others were trying to escort Ross out of the room, Dr. Fennell "sat up there laughing." From this evidence, the jury could have concluded that St.

10

Augustine's College administrators acted with reckless indifference to the likelihood of inflicting severe emotional distress on a student to whom they owed special responsibilities as educators.

IV

The defendants also challenge the district court's jury instructions on the infliction of emotional distress claim, contending that the court should not have instructed the jury that reckless indifference would suffice to create liability. We would reverse a jury instruction error only if it were prejudicial, based on a review of the record as a whole. Sturges v. Mathews, 53 F.3d 659, 663 (4th Cir. 1995). The defendants' argument, however, fails to recognize that North Carolina's tort of infliction of emotional distress may be proved by evidence of either intent to cause severe emotional distress or reckless indifference to the likelihood of resulting severe emotional distress. See Dickens, 276 S.E.2d at 332.

V

The defendants contend that the district court erred in submitting the issue of punitive damages to the jury because the evidence did not support an award of punitive damages. Again, we find no merit to the contention. The evidence already recounted in this opinion, if believed, would support a claim of maliciousness, wantonness, or recklessness on the part of the defendants, and that is what North Carolina law requires to support a claim for punitive damages. See Stanback v. Stanback, 254 S.E.2d 611, 623 (N.C. 1979).

VI

Finally, the defendants contend that the district court unjustly assessed plaintiff's costs against them, particularly in view of the fact that they succeeded in their defense of the claims under the Civil Rights Act. The district court, however, enjoys broad discretion in taxing costs pursuant to Federal Rule of Civil Procedure 54(d), and our review is only for an abuse of discretion. See Flint v. Haynes, 651 F.2d 970, 973 (4th Cir. 1981), cert. denied, 454 U.S. 1151 (1982). While the defendants did succeed on many of the claims alleged

11

against them, Ross succeeded on a significant portion of her claim, recovering substantial damages. In the circumstances, we cannot conclude that the district court abused its discretion.

Finding no reversible error, the judgment of the district court is

AFFIRMED.

12