I concur with the lead opinion but in judgment only on Assignment of Error One. The recent U.S. Supreme Court case of Reeves v. SandersonPlumbing Prods. Inc. (2000), 530 U.S. 133; 120 S.Ct. 2097, clarified that a factfinder may consider a party's lack of credence as affirmative evidence of discrimination. I believe this subtle clarification requires a different analysis of facts than the lead opinion presents in this case.
The main opinion states that "appellant failed to offer sufficient evidence that all three of Pinkerton's justifications for his demotion were pretext * * *." On the contrary, the employer's reasons stated in its memorandum explaining plaintiff's demotion could well be considered pretextual. For example, the employer claimed that plaintiff had a duty to report the sexual harassment claim, whereas there was evidence this duty fell only to "supervisors and/or management" and at the time of this incident he was neither Officer Perelka's supervisor nor a member of management. An exhibit indicates that another person had assumed his duties while he was on special assignment. Further, plaintiff asserts he was never part of management. If there is any question as to his position and duties, this question is a jury matter.
Also potentially pretextual is the employer argument that plaintiff was obliged to "immediately" report what Perelka said. Appellant countered that there was no one for him to call on the evening of the 15th of April when he was called off duty and at home and that it was not until oral argument that anyone mentioned the 800 number that allegedly could be called at all times. Similarly rising to the level of pretext is the contingent explanation that that by allowing the situation to continue — that is, by advising Officer Perelka to conceal a tape recorder — plaintiff escalated the situation and opened Pinkerton's up to possible litigation. Again, if plaintiff had no supervisory duties that day and therefore no duty to report Perelka's conversation with him, he also had no attendant duty to discourage her from using a recorder, and he certainly would not be responsible for any litigation that would arise. Moreover, plaintiff clearly states Perelka was not his subordinate and he had no authority over Perelka the day of either incident, so he had no power to intervene.
The lead opinion further argues that plaintiff "also failed to even raise an inference that retaliation actually motivated this decision."Ante 12. The opinion requires that in order for a reason to be considered pretext plaintiff must show not only that the reason is false but also that "discrimination was the real reason." In support the main opinion cites St. Mary's Honor Center (1993), 509 U.S. 502, and Olive v. ColumbiaHealthcare Corp. (Mar. 9, 1999) Cuyahoga App. Nos. 75249, 76349, unreported.
Both cases, however, as well as the lower court's decision in the case at bar, were issued before Reeves v. Sanderson Plumbing Prods., Inc., was issued on June 12, 2000. Clarifying its earlier ruling in St.Mary's HonorCenter, the U.S. Supreme Court ruled in Reeves that the trier of fact may infer discrimination from the falsity of the employer's explanation. In other words, additional independent evidence of intentional discrimination is not necessary. Proof that the defendant's explanation is unworthy of credence in itself can function as affirmative evidence of intentional discrimination. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.
In specifically stating the issue, the U.S. Supreme Court provided a full spectrum of lower court cases on this matter:
 * * * to resolve a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination (as defined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. Compare Kline v. TVA, 128 F.3d 337 (CA6 1997) (prima facie case combined with sufficient evidence to disbelieve employer's explanation always creates jury issue of whether employer intentionally discriminated); Combs v. Plantation Patterns, 106 F.3d 1519 (CA11 1997) (same), cert. denied, 522 U.S. 1045 (1998); Sheridan v. E.I. DuPont de Nemours Co., 100 F.3d 1061 (CA3 1996) (same) (en banc), cert. denied, 521 U.S. 1129 (1997); Gaworski v. ITT Commercial Finance Corp., 17 F.3d 1104 (CA9) (same), cert. denied, 513 U.S. 946 (1994); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120 (CA7 1994) (same); Washington v. Garrett, 10 F.3d 1421 (CA9 1993) (same), with Aka v. Washington Hospital Center, 156 F.3d 1284 (CADC 1998) (en banc) (plaintiff's discrediting of employer's explanation is entitled to considerable weight, such that plaintiff should not be routinely required to submit evidence over and above proof of pretext), and with Fisher v. Vassar College, 114 F.3d 1332 (CA2 1997) (en banc) (plaintiff must introduce sufficient evidence for jury to find both that employer's reason was false and that real reason was discrimination), cert. denied, 522 U.S. 1075 (1998); Rhodes v. Guiberson Oil Tools, 75 F.3d 989 (CA5 1996) (same); Theard v. Glaxo, Inc., 47 F.3d 676 (CA4 1995) (same); Woods v. Friction Materials, Inc. 30 F.3d (CA1 1994) (same).
In Reeves the employer claimed it fired the employee because of his failure to discipline absent and late employees. The employee showed that this explanation was false. Like the employee in the case at bar he "similarly cast doubt on whether he was responsible for any failure to discipline late and absent employees," because his job was to review only daily and weekly attendance reports whereas disciplinary writeups were based on monthly reports reviewed by another employee. The U.S. Supreme Court concluded that a jury might reasonably reject the employer's proffered explanation and go even further:
 In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty out a material fact as affirmative evidence of guilt. Wright v. West, 505 U.S. 277, 296, 120 L.Ed.2d 225, 112 S.Ct. 2482 (1992); see also Wilson v. United States, 162 U.S. 613, 620-621, 40 L.Ed. 1090, 16 S.Ct. 895 (1896), 2 J. Wigmore, Evidence Para. 2782(2), p. 133 (J. Chadbourn rev. ed. 1979). (1992). * * * Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.
Id. at 2108-2109.
In the case at bar, most of the explanations the employer offered could well cast doubt on the remaining reason the employer gave to the plaintiff in its memorandum:
 You superceded the chain of command by contacting Mr. Kubisen's supervisor the next day. If you had contacted Mr. Kubisen in a timely manner this matter could have been resolved with minimal effects to the operations of this office.
Here is a "dammed if you do and dammed if you don't" explanation. On the one hand, plaintiff is criticized for not acting quickly. On the other hand, he is criticized for superceding the chain of command when he received no response.
Blatantly pretextual on its face, moreover, is the claim that he superceded the chain of command. The company's policy provided as follows: "All supervisors and/or management will immediately report any such incidents of sexual harassment to the District Manager or RegionalVice President." (Emphasis added.) Thus the policy actually directed the call be made to the very person plaintiff called, Prassack, the District Manager. This provision does not even mention calling the supervisor.
Furthermore, plaintiff presented evidence that another supervisor, Buettner,[1] was aware of the first incident and did not report it until four days later. Yet Buettner was not treated adversely. In fact, not only was he not disciplined, he was promoted. Such difference in treatment is an additional basis to conclude plaintiff's demotion was in retaliation for his assisting Perelka. In other words, plaintiff was the only person who attempted to help the woman in a protected activity, and he was demoted a few days later, both in position and pay.
The other reasons employer gave also appear inconsistent. The employer blamed him for upsetting the "operations of this office." The memo does not immediately specify how the office was affected. A few sentences later, however, the memo claims the following problem resulted from his "failure to bring this matter to the immediate attention of [his] immediate supervisor":
 1. The discharge of a competent armed employee. If you [had] brought this to the attention of Mr. Kubisen, the employees involved in this matter would have been separated and counseled. Instead you allowed this situation to continue and advised Officer Perelka to conceal on her persons [sic] a tape recorder, thereby escalating this situation to the point that a [sic] employee was terminated. By so doing you have opened Pinkerton's up to possible litigation should she wish to pursue this matter.
This explanation appears inconsistent with other evidence. Here, plaintiff was held responsible for another employee's discharge or the escalation of the matter, when the evidence shows he had no authority or responsibility in the matter. Furthermore, he stated that he advised her to report the matter if she believed that her co-worker was harassing her.
The employer statement also alleges that he was demoted because the taping of the event put the employer in legal jeopardy. It is significant that nothing in this memo suggested that his actions put her in jeopardy. This is an explanation offered later in court and thus could properly be discredited. Rather, the memo focuses on the firm's liability, not her safety. The belated concern for her safety provides even sharper emphasis to the first written explanation: it was his role in assisting a victim in a potential sexual harassment claim and its effect on the firm's legal liability that caused his demotion.
The only remaining explanation is that he gave false information to his supervisor. The majority says that providing a superior with misinformation is a form of insubordination, which is a legitimate and nondiscriminatory reason for his termination. The term the employer used in its memo explaining his demotion, however, was "false information." The employer explained this phrase as "stating that you were not aware of Officer Perelka's complaint until the morning of Friday, 4/16-93," whereas [e]vidence shows that you were aware of the complaint on 4/15-93." From these facts, the main opinion concludes that appellant provided misinformation.
It is not obvious, however, that what he said was "misinformation," much less "false information." Plaintiff explains that in the evening telephone call to his home Perelka spoke in general terms, not with any specifics. She was, moreover, uncertain whether the officer was engaging in unlawful sexual harassment. In fact it was her suggestion, not his, that she return to work with a tape recorder in order to attempt to specify the allegations. However, appellant had told her that if she believed she was a victim of sexual harassment, she must report it. This context suggests that plaintiff may have viewed her statements as too uncertain to rise to the level of a "complaint." His viewing them as premature might also explain his decision to cite the later April 16 date when later asked when he first became aware of the complaint.
What credence should be given to the employer's focus on the date must be judged, as plaintiff's brief suggests, in the context of the company policy that the victim "should promptly report the incident, preferably in writing (within 48 hours) * * *." If "48 hours" is a clue to what promptness means, the same standard may also be used to judge the duty of a supervisor in relating a complaint immediately. The company preference, moreover, for a written report belies any company concern for the imminent danger of the victim. Deciding whether Perelka's comments on April 15th rose to the level of a "complaint" and whether his statement was "false information" so as to trigger insubordination rather than a pretext to demote plaintiff is a question best left to a jury.
The lead opinion believes the matter stops with this explanation by the employer. It does not. A factfinder may question the sufficiency of the only explanation not totally eliminated. In other words, if plaintiff was not responsible for reporting anything, the date he first learned of anything is not of significance. A factfinder might reasonably disbelieve, therefore, the sufficiency of this reason. Furthermore, a factfinder could reasonably conclude that given the blatant inconsistencies and clear lack of credence to the other explanations proffered, the only remaining reason is not only insufficient but also pretextual.
Finally, the actions that the employer subsequently took could also provide further evidence of retaliation. Not only was he demoted both in status and pay, he was denied bonuses, scheduled overtime, and promotions. In addition, frequent shift and hour changes required him to resign from his part-time job with a police department.
Thus I disagree with the lead opinion on the merits of Powers' claim. However, Powers missed the statute of limitations on his retaliation claims, both his R.C. 4112.02 and his 4113.52 claims.[2] Both claims have the same 180-day limitation period. Otherwise, there would have been enough of a factual dispute to go forward with this case and let a jury decide his statutory retaliation claim. However, since he missed the time for filing, this issue is academic.
[1] Buettner's duties are not clear in the record. In his appellate brief, plaintiff describes him as a "supervisory employee." The employer does not deny this characterization is its appellate brief and argues, rather, that plaintiff was "the superior officer of the three."
[2] Defendant's motion argued that the claims were time-barred but did not specifically mention each claim. Id. at 3.